**Richard Wallace SKEEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–01–00104–CR.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 13, 2002.

Decided Nov. 20, 2002.

Rehearing Overruled Jan. 22, 2003.

Toby C. Wilkinson, Greenville, for appellant.

F. Duncan Thomas, Hunt County Dist. Atty. Office, Steve Tittle, for State.

Before MORRISS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Richard Wallace Skeen appeals from his conviction of manslaughter. The jury assessed punishment at twenty years' imprisonment and a fine of $5,000.00. On appeal, Skeen brings the following points of error:

(1) The court erred by allowing the State to introduce evidence of a subsequent arrest;

(2) The court erred by failing to grant a limiting jury instruction with regard to the subsequent arrest;

(3) The court erred by failing to grant a jury instruction on the issue of self-defense;

(4) The court erred by allowing the State to elicit testimony over a hearsay objection;

(5) The evidence was legally and factually insufficient to support the verdict;

(6) The court erred by allowing the State to improperly bolster its witness; and

(7) Skeen was provided ineffective assistance of counsel.

In the present case, Skeen was convicted of recklessly causing the death of his father. On or about July 2, 1999, Skeen, along with his wife and son, were living at his father's residence. However, on July 2, 1999, Skeen was in the process of moving his family out of his father's residence. The State produced testimony from a thirteen-year-old neighbor that, on the day in question, she witnessed Skeen physically strike his father. In addition, Officer Daniel Keeling, who responded to a domestic disturbance call at the residence, testified the victim told him that he wanted his son out of his house and that his son had threatened to kill him. The officer also

testified Skeen denied making such threats and expressed his desire to move his things out of the residence. The victim left the residence and arrived at a local restaurant at approximately 8:00 p.m. Meanwhile, Skeen was in the process of moving his belongings. On returning to his father's residence, he found that the lock on their bedroom door had been broken. At that point, Skeen testified he needed his pistol because, with the lock broken, his family was in danger.

In addition to the foregoing events, Skeen testified his father returned to the residence at approximately 11:00 p.m. and said, "I thought I told you to get your ass out of here... I'm going to get my shotgun... I know somebody that's going to take care of you." Skeen, brandishing a loaded .44 magnum pistol, followed his father back to his bedroom. Skeen testified his intention was to prevent his father from arming himself with the shotgun. However, Skeen testified that when, Skeen reached his father's bedroom, his father lost his balance and sat on the bed. Skeen testified his father reached out, put both hands on the pistol, and pulled the gun toward himself. Skeen testified that at that point the pistol discharged and his father said he had been shot.

After being shot, the victim walked out of the residence before collapsing on the front lawn. Gordon Dittmar, a neighbor who was passing by, saw the victim and stopped to administer medical assistance. Dittmar testified he asked Skeen to call 9–1–1, and when he hesitated, Dittmar went to his home and made the call. Skeen testified he was unable to place a call for assistance because the telephone in his home had been disconnected. The autopsy revealed the victim died of a gunshot wound to the chest. At the time of the victim's death, he was seventy-two years old, weighed 120 pounds, and suffered from extensive emphysema.

### Evidence of Subsequent Arrest

In his first point of error, Skeen contends the trial court committed error by admitting evidence of a subsequent arrest. The admission of extraneous offense evidence is reviewed under an abuse of discretion standard. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex.Crim.App.1998). If the trial court properly admits the evidence in light of the factors enunciated in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990), and the court's decision to admit the evidence is "within the zone of reasonable disagreement," the trial court's decision will be upheld. *Rankin*, 974 S.W.2d at 718.

Once the trial court has made the determination that the evidence is both relevant and not outweighed by its prejudicial effect, the trial court must be given wide latitude to exclude or, particularly in view of the presumption of admissibility of relevant evidence, admit misconduct evidence as the court sees fit. *Montgomery*, 810 S.W.2d at 377. So long as the trial court thus operates within the boundaries of its discretion, an appellate court should not disturb its decision. *Id.*

Tex.R. Evid. 404(b) provides in pertinent part:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

At trial, Skeen contended the fatal shot was fired accidentally. To rebut this contention, the prosecution sought to introduce evidence of an arrest that took place seventeen months after the offense in question. Specifically, the State sought to introduce evidence that Skeen resisted arrest and that it took three officers to subdue him. Skeen objected to the admissibility on the ground that the arrest was irrelevant and that its probative value was outweighed by its prejudicial effect. In response, the State argued the arrest would be admissible to show the absence of mistake or accident because the elderly victim could not have possibly taken the gun away from Skeen or caused it to discharge as the result of a struggle. Further, the State contended Skeen's strength could not be determined from any other evidence. After hearing argument from both sides, the court made the following determination, "[T]he court finds that the strength of ... Skeen is a relevant issue in this trial.... I cannot see that an arrest for DWI is going to unnecessarily cause this jury to convict this Defendant on a murder case. I'm going to find the probative value does outweigh the prejudicial effect."

Skeen has failed to show the court's decision was outside the zone of reasonable disagreement. *See Rankin*, 974 S.W.2d at 718. The trial court heard argument from both parties regarding the admissibility of the evidence and determined the evidence was relevant and more probative than prejudicial. *See Montgomery*, 810 S.W.2d at 377. Therefore, in light of the foregoing and the deference that is afforded to the trial court's decision, we conclude the trial court has not abused its discretion by admitting evidence of the arrest.

### Limiting Instruction

In his second point of error, Skeen contends the trial court erred by not submitting a limiting instruction concerning the subsequent arrest. The standard of review for errors in the jury charge depends on whether the defendant properly objected. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App.1998); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g); *Gornick v. State*, 947 S.W.2d 678, 680 (Tex.App.-Texarkana 1997, no pet.). If a proper objection was raised, reversal is required if the error "is calculated to injure the rights of the defendant." *Almanza*, 686 S.W.2d at 171. In other words, an error that has been properly preserved is reversible unless it is harmless. *Id.* However, if the evidence is not within the law applicable to the case, the trial court is not required to include a limiting instruction in the charge to the jury. *Hammock v. State*, 46 S.W.3d 889, 895 (Tex.Crim.App.2001).

Tex.R. Evid. 105(a) expresses in pertinent part:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

In *Hammock*, Hammock was convicted of aggravated sexual assault, and during the trial on guilt/innocence, the prosecution introduced evidence of Hammock's past incarceration. *Hammock*, 46 S.W.3d at 891. Hammock's counsel did not request a limiting instruction until the court had prepared the charge and asked counsel for objections. *Id.* at 891–92. The court held that the appropriate time to request a limiting instruction would have been when the evidence was admitted. *Id.* at 893. The court reasoned that failing to

give a limiting instruction at the time of admission allows the jury to draw inferences about the defendant's guilt based on character conformity, and the improper inference could not later be erased by an instruction. *Id.* at 894; *Jackson v. State,* 992 S.W.2d 469, 478 (Tex.Crim.App.1999). Further, the court reasoned that its interpretation of Tex.R. Evid. 105 did not conflict with the Texas Code of Criminal Procedure. *See* Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.2002) (judge shall, before argument begins, deliver to jury a written charge distinctly setting forth law applicable to case); *see Hammock,* 46 S.W.3d at 895. Because the evidence was not limited on admission, the court held it was admitted for all purposes; consequently, a limiting instruction on the evidence was not within the applicable law of the case, and the trial court was not required to include such an instruction. *Hammock,* 46 S.W.3d at 895.

■ In the present case, as set out above, the trial court allowed into evidence the testimony of three officers concerning Skeen's strength. However, Skeen did not request a limiting instruction until the court had prepared the charge and asked counsel for objections. Similar to *Hammock,* the jury had already been allowed to draw inferences from the extraneous offense about Skeen's guilt, and a limiting instruction would have failed to remove such inferences. *Id.* at 894. Because the testimony was admitted for all purposes, the trial court was under no obligation to include a limiting instruction. *Id.* at 895. Therefore, the trial court did not commit error by denying Skeen a limiting instruction. *Id.;* Tex.Code Crim. Proc. Ann. art. 36.14.

### Self–Defense Instruction

■ In his third point of error, Skeen contends the trial court committed error by failing to include in the charge an instruction regarding self-defense. It is well established that a defendant has the right to a jury instruction on any defensive issue that has been raised by the evidence, regardless of whether the evidence is weak or strong, unimpeachable or contradicted, and regardless of what the trial court may think about its credibility. *Granger v. State,* 3 S.W.3d 36, 38 (Tex.Crim.App. 1999); *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App.1984). Further, in a case where deadly force was used, an instruction regarding self-defense is warranted if there is some evidence satisfying the requisites of Tex. Pen.Code Ann. §§ 9.31, 9.32 (Vernon Supp.2002); *see Dyson,* 672 S.W.2d at 463. Accordingly, the issue before this Court is not whether Skeen's testimony is true, but rather whether, if the testimony is believed, an issue of self-defense has been raised. *Dyson,* 672 S.W.2d at 463; *Rodriquez v. State,* 544 S.W.2d 382 (Tex.Crim.App.1976). The defendant's testimony alone can be enough to raise a defensive issue requiring a jury charge, *Dyson,* 672 S.W.2d at 463, and the testimony is to be viewed in a light most favorable to the defendant. *Granger,* 3 S.W.3d at 38.

Tex. Pen.Code Ann. § 9.31 provides in pertinent part:

> (a) ... [A] person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

Tex. Pen.Code Ann. § 9.32 provides in pertinent part:

> (a) A person is justified in using deadly force against another: (1) if he would be justified in using force against the other under Section 9.31; (2) if a reasonable person in the actor's situation would not have retreated; and (3) when and to the

degree he reasonably believes the deadly force is immediately necessary: (A) to protect himself against the other's use or attempted use of unlawful deadly force....

■ In the present case, Skeen has not shown that, at the time of the shooting, he reasonably believed deadly force was immediately necessary. *See* Tex. Pen.Code Ann. § 9.32. Skeen testified he believed his father reached for the gun to pull himself up from the bed, not to use unlawful deadly force. While Skeen may have raised an issue of mistake or accident, he has failed to present evidence that would satisfy the requirements set forth in the Texas Penal Code, and the trial court did not commit error by denying his request for a jury instruction. *Dyson*, 672 S.W.2d at 463.

### Hearsay

■ In his fourth point of error, Skeen contends the trial court committed error by admitting testimony over his hearsay objection. The abuse of discretion standard controls this Court's review of the trial court's decision to admit or exclude alleged hearsay testimony. *Jefferson v. State*, 909 S.W.2d 247 (Tex.App.-Texarkana 1995, pet. ref'd). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim.App.1990).

■ Where an appellant claims the trial court erred in admitting evidence offered by the State, the error must have been preserved by a proper objection and ruling. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991); *Rawlings v. State*, 874 S.W.2d 740, 742 (Tex.App.-Fort Worth 1994, no pet.). The objection must have been timely, and the defense must have stated the basis for the objection unless the particular ground was apparent from the context. *Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex.Crim.App.1992). In addition, Texas law generally requires a party to continue objecting each time inadmissible evidence is offered. *Ethington*, 819 S.W.2d at 858. Any error in admitting the evidence is cured where the same evidence comes in elsewhere without objection. *Mack v. State*, 872 S.W.2d 36, 38 (Tex.App.-Fort Worth 1994, no pet.); *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim.App.1984).

■ In the present case, Skeen contends the following exchange between the prosecutor and witness Glenda Szoboda admitted by the trial court constituted inadmissible hearsay:

[State]: Tell me again, ma'am, when he came to the restaurant, what did you notice about him?

[Witness]: I could tell something was wrong, and I asked him what was wrong and he wouldn't talk.... And he started telling us what was going on at his house, that he—he was real stressed out....

[State]: Well, he was stressed out because of things that were occurring in his house?

[Witness]: Yes.

[State]: What things did he tell you that happened?

[Witness]: He was talking about he wanted his son to move out of his house. He was tired of them tearing things up and partying and just being rowdy.

....

[State]: Did he say if they were smoking pot?

[Witness]: Yes. He said they were smoking pot and drinking. And the only thing he said was tearing things up. He didn't say what they were tearing up.

. . . .

[State]: And did his son make any remarks to him about him throwing him out?

[Witness]: He told me that he wanted them to move out, he was tired of fighting. And his son—he said his son threatened him that he would kill him if he had moved out. And he told him that he was taking him out of his will for the way he was treating him. And his son told him that, if you do that, you will be killed.

However, the statements Skeen allegedly made threatening to kill his father are admissible because they were previously admitted into evidence without objection. *See Hudson*, 675 S.W.2d at 511. Specifically, the following exchange took place between the State and Keeling:

[State]: Now did he say his son would kill him for putting him out or did he tell you that his son had threatened to kill him for putting him out?

[Officer]: I believe his words were that his son would kill him if he put him out.

The foregoing testimony was admitted without objection. Accordingly, in the present case, any error the trial court committed by admitting the statements made by Szoboda concerning the threats was cured by the testimony of Keeling.

■ On the other hand, the statements made by Szoboda that the victim told her Skeen had been partying, tearing things up, and smoking pot in his father's residence amounted to the admission of inadmissible hearsay. In order for the father to have the mental state he professed to

have, the statements would have to be taken as true, which would be in violation of Rule 801. TEX.R. EVID. 801; *Callaway v. State*, 818 S.W.2d 816, 828 (Tex.App.-Amarillo 1991, pet. ref'd). Therefore, the witness' statement that the father told her his son was partying, tearing things up, and smoking pot in the father's residence is outside the scope of the mental or emotional condition exception, and the trial court erred by admitting testimony regarding the events or existing conditions that were the cause of the father's mental and emotional state. *See* TEX.R. EVID. 803(3); *Gibbs v. State*, 819 S.W.2d 821, 837 (Tex.Crim.App.1991).

■ Despite the admission of inadmissible hearsay, the trial court's error does not warrant the reversal of Skeen's conviction. Under the Texas Rules of Appellate Procedure, any error, other than constitutional error, committed by the trial court that does not affect substantial rights must be disregarded. TEX.R.APP. P. 44.2(b). We review the record as a whole to determine whether the error had a substantial influence on the jury's verdict. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998).

■ In the present case, the only issue in dispute was the mental state of Skeen at the time of the shooting. At trial, the State contended Skeen knowingly and intentionally killed his father. The State produced evidence that Skeen physically abused his father on the day of the shooting. Further, the State produced testimony from another neighbor, Dittmar, who called for medical assistance, that Skeen did not give aid to his father, and that Skeen did not appear remorseful for having shot the victim. Further, the State introduced testimony that Skeen and his wife had already removed from the house the guns the father might have used against Skeen. The State reasoned from

the evidence presented that Skeen intended to kill his father.

The statements that were admitted did not reflect Skeen's intent to kill his father; rather, the statements referred to a collateral matter of partying and smoking pot in the residence. In light of the above evidence produced by the State, the jury could have found Skeen guilty despite the inadmissible hearsay. Additionally, the conviction for manslaughter requires only a reckless state of mind. Therefore, the trial court's error did not have a substantial and injurious effect on the jury's verdict.

### Sufficiency of Evidence

In his fifth and sixth points of error, Skeen contends the evidence was both legally and factually insufficient to support the jury's verdict.

### 1. Legal Sufficiency

When there has been a challenge to both the legal and factual sufficiency of the evidence, the court must first determine if the evidence was legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App. 1996); *Hines v. State*, 978 S.W.2d 169, 172 (Tex.App.-Texarkana 1998, no pet.). The proper standard of review to determine legal sufficiency is whether the evidence would support the verdict when viewed in the light most favorable to the verdict. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000). In other words, if any reasonable trier of fact could have found beyond a reasonable doubt the essential elements of the crime, the verdict will be deemed legally sufficient. *Clewis*, 922 S.W.2d at 134.

In the present case, the jury was instructed that a person commits the offense of manslaughter if he or she recklessly causes the death of an individual.

The Texas Penal Code defines recklessness as follows:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Pen.Code Ann. § 6.03 (Vernon 1994).

The State produced testimony that Skeen physically abused his father on the day in question, that the police had been called to the residence for terroristic threats, and that Skeen threatened to kill his father on the day in question. Further, Skeen testified he followed his father down the hall of the residence with a loaded pistol after the father had threatened Skeen. Under the above circumstances, a reasonable juror could have found that Skeen grossly deviated from the standard of care an ordinary person would exercise under the circumstances. *See* Tex. Pen. Code Ann. § 6.03; *Johnson*, 23 S.W.3d at 7. A reasonable juror could have determined Skeen invited a confrontation and was reckless in doing so. Accordingly, the State presented legally sufficient evidence to support the verdict.

### 2. Factual Sufficiency

A factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring neither party. *Johnson*, 23 S.W.3d at 7. In determining the factual sufficiency of the evidence to establish the elements of the offense, we view all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the

evidence as to be clearly wrong and unjust. *Id.* Further, we set aside the verdict for factual insufficiency only if (1) the evidence in support of a vital fact, considered as standing alone, is factually too weak to support it, or (2) looking at all the evidence, some evidence supports a positive inference and some supports a negative inference, but the State's evidence is so weak as to make the finding against the great weight and preponderance of the available evidence. *Goodman v. State*, 66 S.W.3d 283 (Tex.Crim.App.2001). Such a finding is described as being "manifestly unjust," or "shocks the conscience," or "clearly demonstrates bias." *Id.*

■ In the present case, the State produced expert testimony that the pistol had been fired between two and five feet from the father, that the father did not have gunshot residue on his hands, and that it was physically impossible for the father to have had his hand on the gun at the time of the shooting. However, in contrast, Skeen elicited testimony from the same witnesses that the gun was a poor depositor of gun residue, that the residue, if any, on the father could have been washed away by the father's blood, and that the father's arms were long enough to grab the gun and still have been shot from over two feet away. Further, as set out above, Skeen testified the father threatened him before the shooting occurred.

While Skeen has presented evidence in support of his contention, he has not presented such compelling evidence that would render the verdict against the great weight and preponderance of the evidence. *See Johnson*, 23 S.W.3d at 7. Further, due deference is to be afforded to the factfinder's assessment of the weight and credibility of the evidence. *Id.* at 11. As a result, the evidence presented at trial was factually sufficient to support the verdict.

## Witness Bolstering

In his seventh point of error, Skeen contends the trial court committed error by allowing the State to improperly bolster one of its witnesses. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Montgomery*, 810 S.W.2d at 391.

■ Testimony elicited to rebut prior impeachments by opposing counsel is not considered improper bolstering. *Anderson v. State*, 717 S.W.2d 622, 629 (Tex.Crim.App.1986). In the present case, the following testimony was elicited at trial:

[Appellant]: Okay. So this little scenario with Mr. Littlefield and yourself is just between you two; isn't that correct?

[Witness]: Yes.

[Appellant]: You just made it up, didn't you?

[Witness]: I don't understand what you mean.

[Appellant]: Well, I mean you just did it. Not based on what he said but based on what you think had happened; isn't that correct?

[Witness]: It's based on his testimony, yes.

[Appellant]: Did you rehearse that?

[Witness]: I didn't rehearse anything.

[Appellant]: Okay. Where were you late Thursday at about 11 o'clock?

[Witness]: In the 196th court.

[Appellant]: Okay. Who was in the court with you?

[Witness]: Mr. Littlefield.

[Appellant]: And who else?

[Witness]: There was Investigator—or Marshal Rich and also Tommy Grandfield. And also I think attorney Craig Black.

[Appellant]: Okay. And isn't it true you all were rehearsing your testimony today; isn't that correct?

[Witness]: I was going over my testimony.

[Appellant]: Oh I see. Okay. And each one of you went over your testimony. That's—as a practice, didn't you?

[Witness]: We went over our testimony, yes.

[Appellant]: So you've heard all his questions before, haven't you?

Redirect Examination

■■■■ [State]: Okay. You're a police officer. Correct?

[Witness]: That's correct.

[State]: Why would you lie about something?

[Witness]: I wouldn't.

[Appellant]: Judge, I'm going to object to counsel trying to bolster the witness' testimony.

Skeen contends the above line of questioning resulted in improper bolstering of the witness' testimony. However, Skeen's counsel opened the door to such questioning by implying the witness had fabricated his testimony and it was a product of rehearsal. When a witness has been impeached, the subsequent rehabilitation of a witness is not considered improper bolstering. *Anderson,* 717 S.W.2d at 630. Accordingly, Skeen has not shown that the trial court abused its discretion by allowing the State to rehabilitate its witness.

*Ineffective Assistance of Counsel*

In his eighth, ninth, and tenth points of error, Skeen contends he was provided with ineffective assistance of counsel. The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail, an appellant must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000); *Rosales v. State,* 4 S.W.3d 228, 231 (Tex.Crim.App.1999). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

■■■■ Our review of counsel's representation is highly deferential, with a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Tong,* 25 S.W.3d at 712. This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex. Crim.App.1979); *Harner v. State,* 997 S.W.2d 695, 704 (Tex.App.-Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). As a result, the Texas Court of Criminal Appeals has often held that, on direct appeal, the record has

not been sufficiently developed to enable an appellate court to adequately determine whether the appellant was provided ineffective assistance of counsel. *Id.* at 814–15.

In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State,* 57 S.W.3d 436, 441 (Tex.Crim.App.2001). We will not conclude the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Id.; see Thompson,* 9 S.W.3d at 814.

**1. Did counsel's decision not to object to being called as a witness for the State result in ineffective assistance of counsel?**

In the present case, Skeen's counsel delivered bullets to the investigating officer for testing. The State called counsel as a witness to explain the origin of those bullets because counsel had previously questioned whether the bullets used in testing could render an accurate result. During the course of the examination, the State asked counsel if it was true that he "misrepresented to this [j]ury that those were different bullets on purpose." Counsel did not object to being called as a witness at trial, and the record is void of any reason for counsel's decision not to object.

Similarly, in *Thompson,* the court held the record had not been fully developed to a point that the court could adequately consider the issue on direct appeal. *Thompson,* 9 S.W.3d at 814. The court reasoned that "an appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions." *Id.* In the present case, Skeen has failed to meet the first prong of *Strickland* because the record has not been adequately developed for this Court to consider whether trial counsel's representation was ineffective. However, like in *Thompson,* Skeen is not precluded from bringing a petition for writ of habeas corpus to fully develop the record and determine what, if anything, motivated trial counsel not to object to being called as a witness. *Thompson,* 9 S.W.3d at 814–15.

**2. Did counsel's decision not to pursue his objections after they had been sustained result in ineffective assistance of counsel?**

In the present case, Skeen contends his trial counsel provided ineffective assistance because he did not pursue his objections to an adverse ruling. *See Ramirez v. State,* 815 S.W.2d 636, 643 (Tex. Crim.App.1991) (holding it must be clear from record trial court overruled defendant's objection; otherwise, error is waived). Specifically, Skeen contends the following objections resulted in ineffective assistance of counsel:

> [State's opening argument]: He comes back about 11 o'clock at night thinking— imagine this, a 72–year–old man coming back after 11 o'clock at night to his own house. That's how scared he was, to stay away until 11:00 o'clock at night.

> [Counsel]: Judge, we're going to object to Counsel interjecting his opinion into his opening statement.

> The Court: Sustained. You can argue what you believe the evidence will show.

> . . . .

> [State's opening argument]: If it's an accidental shooting with your father involved, no matter how much you dislike

him, you're going to be upset that your father was accidently [sic] shot.

[Counsel]: Judge, I'm going to object to Counsel interjecting his opinion into this case in his opening statement.

The Court: Sustained.

. . . .

[State's examination of Amber Hoedebeck]: I just want to make sure your testimony was you saw the Defendant strike—

[Counsel]: Judge, I'm going to object. It's been asked and answered.

The Court: Sustained. I think she's already testified to that.

. . . .

[State]: Is it your testimony—and I know Mr. Williams—we talked about this—is it your testimony that you saw the Defendant do this eight hours before the victim was murdered?

[Witness]: Yes.

[Counsel]: Judge, I'm going to object to Counsel eliciting from this witness facts that are not in evidence regarding before this person was murdered. That's a totally improper question. It's prejudicial.

The Court: Sustain the objection. I have not heard any time frame on when the senior Mr. Skeen was shot.

. . . .

[State's examination of Officer Mario Robles]: If he was really trying to get out that night, why would he leave the van there?

[Witness]: I have no idea.

[Counsel]: Objection. That's based on speculation.

The Court: Sustained.

. . . .

[State]: We went over your reports, did we not?

[Witness]: That's correct.

[Counsel]: Your Honor, I'll object to counsel leading the witness.

[State]: Judge, he's the one impeaching on, trying to make him out to be a liar because he reviewed his evidence with me.

The Court: Overruled.

[Counsel]: Judge, I'm going to object to the side-bar comments of counsel—

The Court: Sustain.

[Counsel]: and ask the Court to admonish the Jury to disregard.

The Court: The Jury will remember that whatever attorneys say, including questions, are not evidence in this case.

The record is devoid of any explanation for counsel's decision not to pursue the objections to adverse rulings. Accordingly, Skeen has not produced sufficient evidence to overcome the presumption that counsel provided adequate representation. *See Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex.Crim.App.1998).

**3. Did counsel's decision not to object to a witness' testimony as being in violation of both the federal and state Constitutions result in ineffective assistance of counsel?**

■ Skeen complains that counsel's failure to object to the testimony of Szoboda violated his right to confront the witness. However, the motivation, if any, for not objecting is not in the record, and Skeen has failed to present sufficient evidence that counsel's representation was ineffective. *Id.* Further, in light of the record as a whole, Skeen has failed to show how the outcome of the trial would have been different given an objection to his right to confrontation. *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052.

Based on the foregoing, we affirm the trial court's judgment.