

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00182-CR

LUIS ALBERTO VALDEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR21-194

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

Luiz Alberto Valdez was convicted by a Rusk County jury of indecency with a child by sexual contact and assessed a sentence of forty years' imprisonment with a $10,000.00 fine.[1] On appeal, he claims the trial court reversibly erred in allowing a statement made by a State law enforcement witness, which Valdez argues inadmissibly bolstered the testimony of the complainant. Because we find no abuse of discretion, we affirm the trial court's judgment.

## I. Background

Sandy, the complainant, was the middle of three sisters. Jill, the oldest, was about fifteen or sixteen at the time of the events at issue.[2] Sandy was about twelve or thirteen, and Amy, the youngest sister, was about eleven or twelve. On one occasion, Amy came to her mother, Rachel, upset and told her that Valdez had shown her pornography on his cell phone. About a month later, Jill told Rachel that Valdez had touched her on the back in a manner that made her "uncomfortable." He did that while telling Jill that "he had never been with girls [her] age" and that her mother would "kill him" if she "found out the way he was touching" her. Rachel reported those acts to the police, Child Protective Services contacted her, and all three girls underwent forensic interviews.

In her forensic interview, Sandy told Jennifer Alejandro of the Rusk-Panola Children's Advocacy Center (CAC) that Valdez touched her breasts and vaginal area on more than one

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(d).

[2]We use pseudonyms to protect the identity of "any person who was a minor at the time the offense was committed" and family members. TEX. R. APP. P. 9.10(a)(3).

occasion.[3]  Sandy said Valdez had also shown her pornographic recordings.  She became very emotional and began to cry, such that it was "kind of hard" for Alejandro "to understand some of the things that she was saying."  Sandy told Alejandro that Valdez threatened her with having to move schools and said people would make fun of her if she told of his actions.  Those allegations led to Valdez's prosecution and conviction.

## II.    The Trial Court Did Not Err in Allowing the Statement from the State's Witness

The State presented testimony from Lieutenant Roy Cavazoz, who was the investigator for the Rusk County Sheriff's Office.  By the time Cavazoz testified, the jury had already heard testimony from Rachel, Sandy, Sandy's sisters, and the CAC forensic interviewer.

During cross-examination of the State's witnesses, Valdez asked questions designed to impeach Sandy's credibility.  Valdez asked Alejandro if she knew whether the sisters discussed among themselves what they would tell her.  Some other examples of Valdez's attempt to impeach witnesses include:

- Twice he asked Alejandro if "there [was] any other evidence that this happened except that [Sandy] sa[id] it happened."

- Valdez pointed out that Sandy could not remember if the events she described occurred around Christmas or around Rachel's birthday.

- He asked, "[W]hat other information do we have that [Sandy] doesn't accurately remember, that we know she couldn't accurately remember, besides what time of year it was."

---

[3]Sandy described her vaginal area as "the part of her body that she pees with."

- He asked several questions about why a sexual assault nurse examiner exam was not performed.[4]

- He asked Rachel if she had "see[n] any of these bad things" that the girls described.

Additionally, Valdez asked Cavazoz if he had found "any other evidence to substantiate" his "investigation other than the statements by the girls" and if their allegations were the "only evidence that those events occurred." After that last question to Cavazoz, Valdez passed the witness. On re-direct examination, the State asked Cavazoz if, in his experience, it was "uncommon or . . . fairly common" for "this kind of crime" to "essentially come[] down to the young lady's testimony." Cavazoz responded,

> And like I said, I've sat through many of these interviews. A lot of times while watching them you get the experience of being able to tell what is a truthful statement and what's not. I've sat through many of them where I'm at the end of it and I'm like, somebody has coached this kid to say this. That -- I did not come across that with any of these children. *These children were believable*.

(Emphasis added). The italicized sentence is the subject of Valdez's complaint. Valdez objected to Cavazoz's answer, stating, "I need to object to that as bolstering, Your Honor." His objection was overruled.

### A. Applicable Law

The Texas Court of Criminal Appeals has

defined "bolstering" as "any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'"

---

[4]Cavazoz testified that, because Sandy's outcry was well beyond 120 hours of the alleged abuse, recovery of any DNA evidence was unlikely.

*Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009)[5] (quoting *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993)). "[E]vidence that corroborates another witness' story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally *further* tendency to establish a fact of consequence, should not be considered 'bolstering.'" *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993). Moreover, "[t]estimony elicited to rebut prior impeachments by opposing counsel is not considered improper bolstering." *Skeen v. State*, 96 S.W.3d 567, 578 (Tex. App.—Texarkana 2002, pet. ref'd) (citing *Anderson v. State*, 717 S.W.2d 622, 629 (Tex. Crim. App. 1986)).

### B.      Standard of Review

Because a claim of bolstering involves an allegation of a violation of an evidentiary rule, we review the trial court's ruling on admission for abuse of discretion. *See Skeen v. State*, 96 S.W.3d 567, 579 (Tex. App.—Texarkana 2002, pet. ref'd). "An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion." *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). "In other words, as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld." *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). "[T]rial courts are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

---

[5]*Rivas* acknowledged that there was some dispute regarding the validity of bolstering as an objection sufficient to preserve error. "A fundamental problem with an objection to 'bolstering' is its inherent ambiguity." *Rivas*, 275 S.W.3d at 886. "While the term 'bolstering' is slowly dying as an objection on its face, it has not yet expired, despite the fact that the term itself failed to survive the adoption of the Rules [of Evidence]." *Id.*

## C.      Analysis

"It is a well-settled rule in this and other jurisdictions that the State may not bolster or support its own witnesses unless they have been impeached on cross-examination." *Farris v. State*, 643 S.W.2d 694, 697 (Tex. Crim. App. 1982). "The bolstering testimony must be related to the impeachment to be admissible." *Id.*

Valdez, in his cross-examination of Cavazoz, suggested that, other than Sandy's accusation, there was no other evidence that the alleged indecency by contact occurred.[6] He asked Rachel if she had seen any abuse herself. Valdez also asked Rachel whether Sandy and her sisters had discussed among themselves their experiences with Valdez's inappropriate conduct.

Cavazoz was the State's penultimate witness.[7] Valdez's first two questions on cross-examination follow:

> Q.      [(By Valdez's Counsel)] . . . [D]id you find any other evidence to substantiate your investigation other than the statements made by the girls?
>
> . . . .
>
> Q.      . . . . [T]he allegations that [Sandy] has made is the only evidence that those events occurred?

The State, on re-direct examination, established the county of the offense, established that Cavazoz obtained a warrant for Valdez's arrest, and then asked,

---

[6]"The uncorroborated testimony of either the child or an outcry witness suffices to support a conviction for indecency with a child." *Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

[7]After his testimony, the State recalled Alejandro to authenticate and sponsor Sandy's CAC interview, which was admitted with Valdez's agreement.

6

> Q. [(By the State)] . . . [Defense counsel] just asked you whether the case essentially comes down to the young lady's testimony; correct?
>
> A. [(By Cavazoz)] That is true, yes.
>
> Q. Okay. Tell the jury, in this kind of crime and in your experience, is that something that is uncommon or is that something that is fairly common?

That prompted Cavazoz's answer, quoted above, that he had seen some children who appeared to be coached and, in his experience, Sandy and her sisters "were believable."

Valdez's strategy throughout trial was to show that proof of his guilt rested on the uncorroborated testimony of Sandy, who may have concocted her allegations with her sisters, who also alleged inappropriate acts by Valdez.[8] However, by impeaching Sandy in this way, Valdez opened the door to Cavazoz's opinion.[9]

Because Valdez consistently sought to question the credibility of Sandy, Cavazoz's statement was not impermissible bolstering. As a result, we find that the trial court did not abuse its discretion in overruling Valdez's trial objection to Cavazoz's testimony.

---

[8]He also implied that Sandy's accusation was prompted by her mother to get Valdez in trouble.

[9]Also, "a lay witness may offer an opinion on an ultimate issue." *Ex parte Nailor*, 149 S.W.3d 125, 135 (Tex. Crim. App. 2004). *Nailor* approved a police officer testifying, "as either a lay witness or an expert, that he interpreted the defendant's actions to be a drug transaction." *Id.* at 134 n.41.

### III.     Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:      May 22, 2025
Date Decided:        July 21, 2025

Do Not Publish