

NUMBER 13-07-627-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CARLOS ANDRES SEPULVEDA,                                    Appellant,

v.

THE STATE OF TEXAS,                                         Appellee.

On appeal from the 27th District Court
of Bell County, Texas

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Vela
Memorandum Opinion by Justice Vela**

A jury convicted appellant, Carlos Andres Sepulveda, of aggravated sexual assault

of a child and sentenced him to fifty years' imprisonment. TEX. PENAL CODE ANN. § 22.021

(Vernon Supp. 2008). In five issues, he argues (1) the trial court erred in denying his

requested instruction for a lesser-included offense, (2) the State erred in bolstering its

witnesses, (3) trial counsel was ineffective, and (4) the trial court erred in denying his motion for a mistrial.  We affirm.

## I. BACKGROUND

Nine-year-old K.H. lived with her mother, R.H.  On March 25, 2006, appellant came to their home to repair a car.  Afterwards, he, R.H., and K.H. went into the living room to watch a movie.  While watching the movie, R.H. was sitting in a rocking chair, and K.H. and appellant were sitting on the couch.  K.H. had her legs "propped up" on appellant's legs, and she had a blanket covering her body.  K.H. testified that appellant "start[ed] to rub my thigh right there, and then like close to the end he put his hand in my underwear and started playing around in there."  By "playing around," she meant, "Like, touching me and all that."  When the prosecutor asked K.H. where appellant had touched her, she replied, "In my vagina."  When the prosecutor asked her, "What did he do with his finger, [K.H.]?", she said, "He moved it around in there."  In response to that answer, the prosecutor asked her, "And are you talking about your vagina?".  To this, she replied, "Yes, ma'am."  K.H. testified that after appellant left the house, she told her mother that appellant "was playing around in my private."

R.H. testified that when appellant left, K.H. told her that appellant had touched her "In . . . [her] private."  When the prosecutor asked R.H., "Did [K.H.] tell you what he [appellant] did with his finger?", R.H. replied, "She told me that he had put his finger in her vagina."  When the prosecutor asked R.H., "She [K.H.] uses the word that he played around down there.  Is that what she told you?", R.H. answered, "Yes, ma'am."  To clarify, the prosecutor asked R.H.:

> Q.     Whether she [K.H.] used those words or not, were you clear that what
>        this defendant had done is put his fingers in her vagina?

2

A.       Yes, ma'am.

Q.       That is what your daughter told you?

A.       Yes, ma'am.

The day after the incident, K.H. was examined by Deborah Kleypas, a sexual assault nurse examiner. Kleypas testified that: "[K.H.] told me that a guy had touched her privates, and she—her front privates with his fingers. And when I am talking to children, I also have a body diagram and she pointed to the genital area on the body diagram and told me in that area." Kleypas performed a detailed genital exam on K.H. She testified that K.H.'s "outside labia majora and inside were very red." When the prosecutor asked Kleypas, "So inside the labia majora there was also redness.", she replied, "Yes, sir." Next, the prosecutor asked her, "And was that, based on your training and experience, consistent or inconsistent with a male inserting his fingers into her vagina?" She replied, "Her redness could be consistent with her history about what happened." The prosecutor then asked her, "So it was consistent with her story." She replied, "Yes, sir, it was."

The defense rested without calling any witnesses.

II. DISCUSSION

*A. Lesser-Included Offense*

In his first issue, appellant argues the trial court erred in denying his request for a jury charge instruction on the lesser-included offense of indecency with a child.[1] At the charge conference, the trial court denied appellant's request for the lesser-included offense of indecency.

When evaluating charge error, we first determine whether there was error in the charge. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g).

---

[1]*See* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003).

If so, "the next step is to make an evidentiary review . . . as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused."  *Id*.

Under the code of criminal procedure, an offense is a lesser-included offense if:  (1) "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged"; (2) "it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission"; (3) "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission"; or (4) "it consists of an attempt to commit the offense charged or an otherwise included offense." TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006).  The court of criminal appeals has clarified the method for determining whether the allegation of a greater offense includes a lesser offense.  *See Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007).  The *Hall* court phrased the issue as "whether 'the facts required' in Article 37.09(1) are determined by the evidence adduced at trial, or whether the determination is a question of law that can be answered before the trial begins by looking at the elements and facts alleged in the charging instrument."  *Id*. at 531.  The *Hall* court held that the "pleadings" approach is the sole test for determining in the first step whether a party may be entitled to a lesser-included offense instruction.  *Id*. at 535.  In describing this "cognate-pleadings" approach, the *Hall* court stated that a "court looks to the facts and elements as alleged in the charging instrument, and not just to the statutory elements of the offense, to determine whether there exists a lesser-included offense of the greater charged offense."  *Id*. at 526. The availability of a lesser-included instruction in a given case depends on the second step, whether there is some evidence adduced at trial to support such an instruction.  *Id*.

4

at 535.

The first step in the lesser-included-offense analysis, determining whether an offense is a lesser-included offense of the alleged offense, is a question of law. *Flores v. State*, 245 S.W.3d 432, 439 (Tex. Crim. App. 2008). It does not depend on the evidence to be produced at trial. *Id*. It may be, and to provide notice to the defendant must be, capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense. *Hall*. 225 S.W.3d at 535-36.

The evidence adduced at trial remains an important part of the trial court's decision whether to charge the jury on lesser-included offenses. *Id*. at 536. The second step in the analysis asks whether there is evidence that supports giving the instruction to the jury. *Id*. A defendant is entitled to an instruction on a lesser-included offense when the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is "some evidence" in the record that would permit a jury rationally to find that if the defendant is guilty, he or she is guilty only of the lesser-included offense. *Id.* at 536. In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Id*. In other words, the evidence must establish the lesser-included offense as "'a valid, rational alternative to the charged offense.'" *Id.* at 536 (quoting *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)).

Applying the first step of the lesser-included-offense analysis, we do not consider the evidence that was presented at trial. *Id*. Instead, we consider only the statutory elements of aggravated sexual assault of a child as they were modified by the particular allegations in the indictment. *See id*. In this case, the indictment alleged, in relevant part: (1) "Defendant"; (2) "intentionally or knowingly"; (3) "cause[d] the penetration of the female

sexual organ of [K.H.]"; (4) "a child who was then and there younger than 14 years of age and not the spouse of the defendant"; (5) "by placing Carlos Andres Sepulveda's finger in [K.H.'s] female sexual organ."  We now compare these charged elements with the elements of the offense of indecency with a child that could be included in that offense. *Id.* Section 21.11–Indecency With a Child–provides, in relevant part:

> (a)  A person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person:
>
> (1)  engages in sexual contact with the child or causes the child to engage in sexual contact; or
>
> (2)  with intent to arouse or gratify the sexual desire of any person:
>
>> (A)  exposes the person's anus or any part of the person's genitals, knowing the child is present; or
>>
>> (B)  causes the child to expose the child's anus or any part of the child's genitals.
>
> * * *
>
> (c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
>
> (1)  any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
>
> (2)  any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

TEX. PENAL CODE ANN. § 21.11(a) (Vernon 2003).  In this case, the offense of indecency with a child contains one element that was not explicitly charged in this indictment:  the intent to arouse or gratify the sexual desire of any person.  *See* TEX. PENAL CODE ANN. §§

6

21.01(2),[2] 21.11(a)(1) (Vernon 2003 & Supp. 2008).

The elements of aggravated sexual assault of a child as alleged in the indictment do not conclusively establish an intent by appellant to arouse or gratify the sexual desire of any person. The crime as alleged could have been committed solely with an intent to violate K.H., without any concomitant intent to satisfy a sexual desire. The legislature has classified the offense of aggravated sexual assault of a child not as a sexual offense but as an assaultive one. *Compare* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003) (classifying indecency with a child among the sexual offenses against the person), *with* § 22.021 (Vernon Supp. 2008) (classifying aggravated sexual assault among the assaultive offenses against the person). Without looking at the evidence in the case, it is impossible to say that intent to arouse or gratify the sexual desire of a person may necessarily be deduced from the alleged act of appellant penetrating K.H.'s female sexual organ with his finger.

We then ask the question that article 37.09(1) poses: are the elements of the purported lesser offense "established by proof of the same or less than all the facts required to establish the commission of the offense charged[?]" TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 2006). We hold that in the instant case, the elements required to prove indecency with a child are not the same as, or less than those required to prove aggravated sexual assault of a child as alleged in the indictment. Therefore, appellant's requested instruction does not satisfy the first prong of the *Hall* test.

Even assuming that under this indictment, indecency with a child is a lesser-included offense of aggravated sexual assault of a child, we do not find sufficient evidence in the

---

[2]Section 21.01(2) of the penal code states: "'Sexual contact' means, except as provided by Section 21.11, any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE ANN. § 21.01(2) (Vernon Supp 2008).

record to support the instruction. In the second step of a lesser-included-offense analysis, we must examine the evidence adduced at trial to determine if there was some evidence to support instructing the jury on the lesser-included offense. *Hall*, 225 S.W.3d at 536. There is no evidence in the record that would permit a jury rationally to find appellant was guilty only of indecency with a child. When the prosecutor asked K.H., "Where was he [appellant] touching you?", she replied, "In my vagina." When the prosecutor asked, "What did he [appellant] do with his finger, [K.H.]?", she answered, "He moved it around in there." When the prosecutor asked her, "And are you talking about your vagina?", she said, "Yes, ma'am." R.H. testified that K.H. said that appellant touched her "In my private." When the prosecutor asked R.H., "Did [K.H.] tell you what he [appellant] did with his finger?", R.H. replied, "She told me that he had put his finger in her vagina." Kleypas testified that she found "redness" inside K.H.'s labia majora. When the prosecutor asked Kleypas, "And was that [redness], based on your training and experience, consistent or inconsistent with a male inserting his fingers into her [K.H.'s] vagina?", she replied, "Her redness could be consistent with her history about what happened."

Appellant calls our attention to K.H.'s testimony that he "started playing around in there." When the prosecutor asked K.H. what she meant by "playing around," she said, "Like touching me and all that." Appellant also calls our attention to the testimony of Kleypas, who testified that K.H. told her that "a guy had touched her privates, and she—her front privates with his fingers." These statements, however, are not evidence appellant is guilty only of indecency with a child. Furthermore, these statements are not evidence that penetration did not occur. Case law has established that the slightest penetration of the female sexual organ is sufficient to prove penetration even though the vagina is not entered. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (holding that

8

slightest penetration of female sexual organ is sufficient to prove penetration even though vagina not entered); *Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976). Therefore, the testimony relied upon by appellant is not such as would cause a jury to rationally conclude that appellant only touched K.H.'s genitals, but did not actually put his finger in her female sexual organ. Appellant has not demonstrated that there is any evidence in the record that, if he is guilty, he is guilty of only indecency with a child and not aggravated sexual assault of a child. We conclude appellant was not entitled to an instruction on the lesser-included offense. Thus, we hold that appellant has not offered more than a scintilla of evidence in favor of the requested instruction, and therefore was not entitled to a lesser charge on indecency with a child under the second prong of *Hall*. Issue one is overruled.

*B. Improper Bolstering*

In his second issue, appellant argues the prosecutor committed error in bolstering the testimony of the State's witnesses during its case-in-chief and during its guilt-innocence closing argument. "Bolstering occurs when one party introduces evidence for the purpose of adding credence or weight to earlier unimpeached evidence offered by that same party." *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex. Crim. App. 1993) (citing *Guerra v. State*, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988)); *Mumphrey v. State*, 155 S.W.3d 651, 656 (Tex. App.–Texarkana 2005, pet. ref'd). In *Cohn v. State*, the court of criminal appeals defined bolstering as:

> any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Accordingly, evidence that corroborates another witness' story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally *further* tendency

9

to establish a fact of consequence, should not be considered "bolstering." *Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) (emphasis in original, citation omitted). "Regardless of whether a witness is impeached, additional evidence to the same effect is not 'bolstering' if . . . it makes any substantive contribution or incrementally tends to further a fact of consequence." *Briones v. State*, 12 S.W.3d 126, 129 (Tex. App.–Fort Worth 1999, no pet.).

*1. Whether Improper Bolstering Occurred During The Case-In-Chief*

Appellant argues the prosecution called Officer Reese Davis and R.H. who "were used to bolster the testimony of other witnesses." We will separately discuss the testimony of Officer Davis and R.H.

*a. Testimony of Officer Davis*

Appellant directs our attention to several pages of Officer Davis's testimony and argues the prosecution used this testimony to improperly bolster the testimony of other witnesses. Officer Davis was the lead investigator in this case and had attended "kinesic interview schools" sponsored by the Killeen Police Department. He testified in detail about how a criminal case is investigated before it is presented to the district attorney's office. When the prosecutor asked Officer Davis, "In your investigations do you take—especially investigations of this sort, do you take extreme measures to make sure that you are as thorough and accurate as you can be?", he replied, "Yes, sir." At this point, counsel objected that the prosecutor was "trying to bolster his own witness with all those words like 'extreme measures,' et cetera." The trial court sustained the objection. Officer Davis testified that in this case, he: (1) reviewed the statement which R.H. wrote for K.H.; (2) reviewed the sexual assault nurse examiner's report; and (3) reviewed Officer April

10

Johnson's video-taped interview[3] of K.H. With respect to what Officer Davis heard and saw in the video-taped interview, he answered, "No, sir," when the prosecutor asked him: (1) "At any point during the interview of [K.H.] on the tape did—was she led in any way?"; (2) "Did you hear, based on your training and experience, that she had some kind of agenda other than telling what happened to her?"; and (3) "Did she exhibit any bias against the defendant other than for what he did on March 25, 2006?". When the prosecutor asked him, "Did she appear to, based on your training and experience, act appropriately during that interview?", he replied, "Yes, sir."

After questioning Officer Davis about the video-taped interview, the prosecutor asked him, "Did you go into her [K.H.'s] background with her mother?" and "[D]uring your investigation did she indicate any other suspect than this defendant?". Officer Davis replied, "No, sir" to both questions.

Our review of the record does not indicate that K.H.'s testimony stood unimpeached. Defense counsel cross-examined K.H. about her claim that appellant assaulted her while she, R.H., and appellant were in the living room watching a movie.[4] Counsel also cross-

---

[3]The State did not introduce the video-taped interview into evidence.

[4]On cross-examination, defense counsel asked K.H.:

Q.     All right. And your mother was sitting there in the—I believe the living room while he [appellant] messed around in your private part; is that right?

A.     Yes, ma'am. Yes, sir.

Q.     And she didn't notice it?

A.     No, sir.

Q.     Okay. Did she ever stand up and go to another room while this was happening or—

A.     No, sir.

Q.     How long did this—was he playing around with it?

A.     I don't know.

11

examined K.H. about her motive for accusing appellant of the assault.[5]  Thus, Officer Davis's testimony was not impermissible bolstering because before he testified, defense counsel had impeached K.H. (1) about how appellant could have sexually assaulted her while her mother was present in the same room, and (2) by insinuating that the reason K.H. accused appellant of sexually assaulting her was because appellant had scolded her. Thus, the State was entitled to rehabilitate K.H.'s credibility, and Officer Davis's testimony was not improper bolstering.  *See Skeen v. State*, 96 S.W.3d 567, 578 (Tex. App.–Texarkana 2002, pet. ref'd) ("Testimony elicited to rebut prior impeachments by opposing counsel is not considered improper bolstering.").

---

Q. Okay.  Well, more than—do you know what a minute Can [sic] you tell me what a minute is?

A. Sixty seconds.

Q. All right.  Do you think it is more than 60 seconds[?]

A. Yes, sir.

Q. Was it, like, five minutes?

A. I wouldn't know.

[5]On cross-examination, defense counsel asked K.H.:

Q. Okay.  Now you also got mad at him [appellant] one time, didn't you, when he was scolding you?  Do you know what "scolding" means?

A. Yes, sir.

Q. He fussed at you about something once, didn't he?

A. No, sir.

Q. Never?

A. No, sir.

Appellant also calls our attention to Officer Davis's testimony about the "process called kinesic interview."[6] Appellant argues that Officer Davis "testified that he watched the video taped interview of K.H. to determine if the story of the two sides 'matched just perfectly.'"[7] Appellant then states that "[t]he entire line of testimony was used to bolster the investigating officers' testimony."

Other than Officer Davis, there were two other investigating officers involved in this case—Hal Williams and April Johnson—both of whom were police officers with the Killeen Police Department. Officer Williams testified that he was dispatched to Darnall Hospital where he met with Fort Hood criminal investigator Christopher Aston,[8] who advised him that "the juvenile was sexually assaulted in the city of Killeen." Officer Williams testified that the "criminal investigator" identified appellant as the suspect. After Officer Williams

---

[6]Officer Davis described the kinesic interview process as follows:

> [I]n the kinesic interview process, what you're trained to do is basically set a norm on the individual that you are talking to. Most of us are parents in here so, I guess, the easiest way is to use a parenting example. We know when our children are not telling us the truth because we have lived with them and we—you know, you can just look at their eye movement and say, okay, this child, my child is not telling me the truth and this is why. Well, when we do kinesic interview techniques, you will watch a person. You establish a norm with them, and then when you start talking to them and hitting the high point about an offense or an incident that occurred, some of their body language is going to change. And that is kind of just a highlight of that.

When the prosecutor asked him, "So it's, basically for the laymen, you examine their body language . . . make sure that it's appropriate with the story you are being told[?]", he replied, "Yes, sir."

[7]This statement is partially correct. Officer Davis watched K.H.'s video-taped interview, but he did not testify that he watched it to determine if the story of the two sides "'match just perfectly.'" Rather, when the prosecutor asked Officer Davis to "tell the jury briefly what kind of steps you go through to investigate a case before you bring it for review to the District Attorney's Office[,]" he stated, in relevant part:

> Well, what I instruct my detectives to do and what I have been trained to do, the first thing we do is we get a statement from the victim as to what took place. If it's a sexual offense, then we request that a SANE exam is done. From there we try to get a statement from the person who is accused because in any type of criminal investigation there is [sic] two sides to every story and the stories should match just perfectly together. . . .

[8]Christopher Aston did not testify.

13

spoke to Investigator Aston, he spoke to R.H. and K.H. and obtained a written statement from R.H. and K.H. Afterwards, he contacted Officer Davis.

Officer Johnson interviewed K.H. about the sexual assault and testified that K.H. (1) did not identify anyone else other than appellant as the person who had assaulted her, and (2) was consistent with what she had told Officer Williams.

Here, we cannot say that the *sole* purpose of Officer Davis's testimony was to convince the fact-finder that the testimony of Officers Williams and Johnson was worthy of credit. Officer Davis's testimony incrementally tended to further establish facts of consequence, i.e., that K.H. was sexually assaulted and that appellant was the culprit. *See Cohn*, 849 S.W.2d at 820 ("evidence that corroborates another witness' story . . . , in the sense that it has an incrementally further tendency to establish a fact of consequence, should not be considered bolstering"). We hold that Officer Davis's testimony was more than simple bolstering.

*b. Testimony of R.H.*

During direct-examination of R.H., the prosecutor asked her, "Has her [K.H.'s] story ever changed about what happened to her on March 25th of 2006?" She replied, "No, ma'am." Appellant complains this testimony constituted improper bolstering.

Counsel did not object to this testimony and, therefore, did not preserve this complaint for our review. *See* TEX. R. APP. P. 33.1(a); *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998) (explaining that in order to preserve error, a complainant must make timely, specific objection and obtain an adverse ruling on objection from trial court). Even if counsel had preserved the complaint for review, because defense counsel impeached K.H.'s testimony, the State did not impermissibly use R.H.'s testimony to bolster K.H.'s testimony. *See Cohn*, 849 S.W.2d at 820.

14

*2. Whether Improper Bolstering Occurred During The State's Guilt-Innocence Closing Argument*

Appellant argues that improper bolstering occurred in both the beginning and final segments of the State's closing argument. During the State's beginning segment, the prosecutor made the following remarks: "Well, ladies and gentlemen, this is the moment of truth, and that's what I'm going to ask you to do is base your verdict on the truth because you heard the truth from [K.H.]." Because appellant did not object and obtain any adverse ruling[9] from the trial court, he has failed to preserve error, if any. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (holding that "a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal").

Later, in the State's beginning segment of closing argument, the prosecutor argued: "And, see, it's real easy to say that she's a child. Kids lie. Of course, they lie. They lie about little things. They don't lie about the big stuff. You all know that. Anyone who has ever been around kids know [sic] that." At this point, defense counsel objected: "Your Honor, he's going outside of the record. There is no expert on children—" The trial court stated, "The jury will remember the evidence that they heard." Because counsel's objection does not comport with the issue raised on appeal, any error is not preserved for our review. TEX. R. APP. P. 33.1; *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005) (providing that when trial objection does not comport with issue raised on appeal, complaint not preserved for appellate review); *see also Coffey v. State*, 796 S.W.2d 175,

---

[9] "To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "The essential requirement is a timely, specific request that the trial court refuses." *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). Even if the error was such that it could not be cured by an instruction to disregard, the defendant must object and request a mistrial to preserve the error. *Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002).

15

180 (Tex. Crim. App. 1990) (holding defendant's complaint regarding State's closing argument not preserved because it did not comport with objection made at trial).

When the State presented the final segment of its closing argument, the prosecutor made these complained–of remarks to the jury:

> She's [K.H.] telling the truth. And, unfortunately, these crimes happen and sometimes it's one witness.
>
> * * *
>
> That was probably the most difficult day in her life was when she had to get up on that witness stand and tell you 12 with the man that assaulted her in the same room. But she did it. Find him guilty, give her the credibility she deserves, and let's move on.

Because counsel did not object to these remarks, and thus did not obtain an adverse ruling from the trial court, he has failed to preserve error, if any, for our review. *See Cockrell,* 933 S.W.2d at 89. Even if counsel had objected to these remarks and obtained an adverse ruling, the remarks did not fall outside the parameters of permissible jury argument: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) an answer to opposing counsel's argument; and (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000); *Moore v. State*, 233 S.W.3d 32, 37 (Tex. App.–Houston [1st Dist.] 2007, no pet.). Here, the prosecutor's remarks were made in response to defense counsel's closing argument in which he questioned K.H.'s credibility by telling the jury, "[T]hink about what she [K.H.] said, she was obviously coached."[10] Therefore, the State's argument was an answer to

_____

[10]When the prosecutor finished the beginning segment of his closing argument, defense counsel made his closing argument, stating in relevant part:

> We've got a nine-year-old girl who got on the witness stand—and she's just as pretty as a picture—got on the witness stand and gave some testimony that if you listen to it, think about what she said, she was obviously coached.
>
> Do you remember the last question the Prosecution asked of her was, Why are you

16

opposing counsel's argument.  Issue two is overruled.

*C. Ineffective Assistance of Trial Counsel*

In issues three and five, appellant argues he was denied the right to effective assistance of trial counsel.  *See* U.S. CONST. amend. VI.  Specifically, he contends counsel failed to fully investigate the case, counsel's health-related problems prevented counsel from making trial objections, and counsel failed to object to improper jury argument at the guilt-innocence and punishment phases of trial.

In analyzing claims of ineffective assistance under the Sixth Amendment, we apply the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984), *Ex parte Ellis*, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007).  Under this framework, appellant must prove by a preponderance of the evidence that:  (1) "'his counsel's performance was deficient'"; and (2) "'there is a 'reasonable probability'—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance.'"  *Id*. (quoting *Ex parte Chandler*, 182 S.W.2d 350, 353 (Tex. Crim. App. 2005)).  The *Strickland* standard applies to ineffectiveness claims regarding trial counsel's performance at both the guilt-innocence and the punishment stages of trial.  *Hernandez v. State*, 988 S.W.2d 770, 772-74 (Tex. Crim. App. 1999).

To establish deficient performance, appellant must show that "'counsel was not acting as 'a reasonably competent attorney,' and his advice was not 'within the range of competence demanded of attorneys in criminal cases.'"  *Id*. (quoting *Ex parte Chandler*, 182 S.W.3d at 354).  Appellant must overcome the "'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'"  *Id*. (quoting

---

doing this?  It was something to the effect of that justice be done or that he can't do this to another person.  Is that the word of a nine-year-old child?  Think about that.

*Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). Therefore, appellant must "'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id*. (quoting *Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992)). "The reasonableness of an attorney's performance is judged according to the 'prevailing professional norms' and includes an examination of all the facts and circumstances involved in a case." *Id*. (quoting *Strickland*, 466 U.S. at 688). We "'must be highly deferential to trial counsel and avoid the deleterious effects of hindsight.'" *Id*. (quoting *Thompson*, 9 S.W.3d at 813).

Under the second part of the *Strickland* analysis, appellant "must establish that the 'constitutionally deficient performance prejudiced his defense–that is, he must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Ex parte Chandler*, 182 S.W.3d at 354). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). "When making this determination, any constitutionally deficient acts or omissions will be considered in light of the 'totality of the evidence before the judge or jury.'" *Id*. (quoting *Strickland*, 466 U.S. at 695).

"In the usual case in which an ineffective-assistance claim is made, 'the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional.'" *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008) (quoting *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)). When defense counsel has not been afforded an opportunity to explain his or her actions, "an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'"

18

*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

*1. Failing To Fully Investigate*

Appellant argues counsel was ineffective because he did not review K.H.'s video-taped interview. He claims that "[h]ad defense counsel properly investigated the case, he could have provided [appellant] with essential information which would have been valuable for any decision he made regarding whether or not to take a plea bargain offer or to take the case to trial."

Ordinarily, defense counsel should make an independent investigation of the facts of a case and not blindly rely on the veracity of his or her client's version of facts or the witness statements in the State's file. *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996), *overruled on other grounds by Mosely v. State*, 983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998). "'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id*. (quoting *Strickland*, 466 U.S. at 691). A decision not to investigate "'must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Id*. (quoting *Strickland*, 466 U.S. at 691). "[W]e will not reverse a conviction unless the consequence of the failure to investigate 'is that the only viable defense available to the accused is not advanced,'" and there is a reasonable probability that, but for counsel's failure to advance the defense, the result of the proceeding would have been different. *Id*. (quoting *Strickland*, 466 U.S. at 694).

Even if we were to assume that defense counsel's failure to review K.H.'s video-taped interview fell below an objective standard of reasonableness, we are not convinced that appellant would have accepted a plea-bargain offer, assuming one had been made,

but for his counsel's ineffective investigation. Appellant has not shown that counsel's failure to review the videotape resulted in the failure to advance the only viable defense available to him. We hold appellant has not established that defense counsel's failure to investigate rendered his assistance ineffective. *See Johnston v. State*, 959 S.W.2d 230, 236 (Tex. App.–Dallas 1997, no pet.) (providing that an attorney's failure to investigate is a basis for establishing ineffective assistance of counsel only when the presentation of specific evidence would have benefitted defendant).

### *2. Counsel's Health Problems*

Appellant argues that throughout the trial, his lead counsel, Mr. Ted Potter, failed to timely object to leading questions, hearsay, and bolstering. Appellant maintains that Potter's inability to hear, along with other health-related problems, prevented him from making these objections. However, the record does not show that Potter had either serious health-related problems[11] or that he was unable to hear what was said throughout the trial.[12] The record shows that although Potter did have trouble hearing some of the

---

[11]Appellant directs our attention to the following portions of the record:

First, during R.H.'s cross-examination at guilt-innocence, Potter began to ask her a question and then told the trial court, "I'm sorry, Your Honor, losing my voice." After co-counsel asked her a question, Potter resumed cross-examination without losing his voice.

Second, after both sides rested and closed at guilt-innocence, Potter told the trial court, "If the State could leave a copy of the proposed Charge [sic] right here. I can go eat some lunch and come back." In response the prosecutor stated, "Why don't you stick around five minutes and then you will have it?" To which Potter replied, "Because you're going to see me go into an eating fit."

Third, during the punishment phase, the State called K.B., who testified appellant had sexually assaulted her in 2002. After the alleged assault, K.B. gave a statement to the police. During cross-examination of K.B., Potter wanted to question her about this statement. Potter told the trial court, "I'm having a health problem right now, but if I could have Mr. Byrd [co-counsel] walk up and approach the witness. . . ." Potter did not specify the nature of his health problem.

[12]Appellant directs our attention to the following portions of the record:

First, during K.H.'s direct-examination, Potter told the trial court he did not hear K.H.'s answer to a question. When the prosecutor told K.H. to "say it a little bit louder," K.H. repeated her answer, and Potter made no complaint about not hearing her. On another occasion, Potter told the trial court, "I can't understand the last few words she [K.H.] said." The trial court repeated what K.H. had said and told K.H. to "[s]peak up,

witnesses's responses, either the witnesses or the trial court repeated what Potter did not hear. Moreover, assuming Potter was hearing impaired or had serious health problems, appellant had the burden to show that counsel's performance was adversely affected because of these disabilities. *See Dickerson v. State*, 87 S.W.3d 632, 637 (Tex. App.–San Antonio 2002, no pet.) (despite allegations defense counsel drank alcohol before and during trial, defendants had burden to show counsel's performance was adversely affected because of the drinking). Thus, appellant still must carry his burden of proving he did not receive effective assistance of counsel because counsel failed to object to leading questions, hearsay, and bolstering. *See Id*.

---

please." Potter cross-examined K.H. without indicating that he could not hear her answers to his questions.

Second, during direct-examination of R.H., the trial court sua sponte told her, "Would you get a little closer to the mike, please, ma'am." At this point, the prosecutor told her, "Both you and your daughter [K.H.] are soft-spoken." Later during R.H.'s direct-examination, Potter told the trial court that he did not hear her "last response." The trial court told R.H. to "[p]lease speak up, ma'am." She repeated her answer, and Potter made no complaint about not hearing her. He cross-examined R.H., without indicating that he could not hear her answers to his questions.

Third, while on direct-examination, Officer Hal Williams testified, in relevant part, that "I then called the Y.S.U. investigator, Sargeant Davis." At that point, Potter told the trial court, "I couldn't hear what kind of investigator he said, Your Honor?" The prosecutor asked Officer Williams, "What does 'Y.S.U.' stand for?" Officer Williams replied, "Youth Services Investigator for the Killeen Police Department." Mr. Potter made no complaint about not hearing him. The defense did not cross-examine Officer Williams.

Fourth, during the direct-examination of Deborah Kleypas, the prosecutor asked her, "And was that, based on your training and experience, consistent or inconsistent with a male inserting his fingers into her [K.H.'s] vagina?" She replied, "Her redness could be consistent with her history about what happened." At this point, Potter told the trial court, "I couldn't hear what she said, Your Honor." The trial court replied, "If you want to, Mr. Potter, you can scoot up here and sit right by the Kleenex box, right there, and that way you will hear better." After this, the prosecutor asked Ms. Kleypas, "So it was consistent with her story." She replied, "Yes, sir, it was." Potter made no complaint about not hearing her. He cross-examined her without indicating that he could not hear her answers to his questions.

Fifth, with respect to the direct-examination of Officers April Johnson and Reese Davis, Potter did not tell the trial court that he could not hear their testimony. Officer Johnson was not cross-examined. Potter cross-examined Officer Davis without telling the trial court he could not hear Officer Davis's responses to his questions.

21

*a. Failure To Object To Bolstering*

Appellant complains counsel failed to object to the State bolstering its witnesses during guilt-innocence closing argument[13] and during the case-in-chief.[14]  Assuming the prosecutor's argument and the testimony of Officer Davis and R.H. constituted improper bolstering, appellant has failed to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ex parte Ellis,* 233 S.W.3d at 330 (quoting *Strickland*, 466 U.S. at 694).  Furthermore, counsel's failure to object on this basis may have constituted sound trial strategy.  We have no evidence bearing on counsel's decision not to object on the basis of bolstering.  If counsel's reasons for his conduct do not appear in the record and there is "at least the possibility" that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal.  *Garza v. State,* 213 S.W.3d 338, 348 (Tex. Crim. App. 2007).

*b. Failure To Object To Leading Questions*

Appellant directs our attention to portions of the record where defense counsel did not object to leading questions.[15]  Assuming defense counsel erred in failing to object to

---

[13]This complaint concerns the prosecutor's closing remarks quoted in issue two.

[14]This complaint concerns the prosecutor's direct-examination of Officer Davis and R.H.

[15]In the first instance, the prosecutor was questioning K.H. about what she did after appellant had sexually assaulted her:  Prosecutor:  "I guess your main thought was to get away from him."  She replied, "Yes, ma'am."  Then, when the prosecutor asked her, "And that's what you did?", she replied, "Yes, ma'am."

In the second instance, the prosecutor was questioning R.H. about the events leading up to the sexual assault.  Prosecutor:  "After he [appellant] worked on the car, what else happened that day?"  She replied that appellant played ball with her son, helped her finish weed eating, and "then we hung out and talked."  Afterwards, she invited him to stay for dinner.

In the third instance, the prosecutor offered into evidence the written report that Deborah Kleypas prepared with respect to her examination of K.H.  After the trial court admitted the report into evidence, the prosecutor asked Kleypas:  "Now, if a child had like a minor cut or something like that, you probably wouldn't even bother to put that down, would you?"  She replied, "At times.  It depends on if it is bruising and if we want to educate and help them take care of it, their parents, then we will document those type of findings."  The

22

these questions on the basis they were leading, appellant has failed to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ex parte Ellis*, 233 S.W.3d at 330 (quoting *Strickland*, 466 U.S. at 694). Furthermore, because counsel's reasons for his conduct do not appear in the record and there is "at least the possibility" that the conduct could have been grounded in legitimate trial strategy, we defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal. *Garza,* 213 S.W.3d at 348.

### c. Failure To Object To Hearsay

Appellant argues that hearsay occurred "throughout the entire case" and that counsel failed to object to Officer Davis's hearsay testimony regarding the video-taped interview of K.H.

### i. Failure To Object To Hearsay Throughout The Entire Case

Appellant has failed to cite to pertinent portions of the record that support this portion of his argument on appeal. Texas Rule of Appellate Procedure 38.1(i) provides that the "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An appellant must direct the court to the specific portion of the record supporting the alleged error. *Jensen v. State*, 66 S.W.3d 528, 545 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd) (citing *Huerta v. State*, 933 S.W.2d 648, 650 (Tex. App.–San Antonio 1996, no pet.)). Because this portion of appellant's argument contains no citations to the record, he has waived appellate review of this complaint. *See* TEX. R. APP. P. 38.1(i); *Jensen,* 66 S.W.3d at 545 ("Because appellant's argument on this point of error contains no citations to the

---

prosecutor then asked her, "And just about every kid comes in with bumps and bruises." She replied, "Yes, they do, especially in certain areas."

23

record, he has waived appellate review of his complaint."); *Huerta,* 933 S.W.2d at 650 (appellant must direct court to specific portion of record supporting complained—of error); *Lape v. State*, 893 S.W.2d 949, 953-54 (Tex. App.–Houston [14th Dist] pet. ref'd) (holding that nothing preserved for review because defendant's brief did not direct appellate court to proper place in record where alleged error was presented).

*ii. Failure To Make Hearsay Objections To Officer Davis's Testimony Regarding K.H.'s Interview*

Appellant argues that counsel was ineffective for failing to make hearsay objections to Officer Davis's testimony about K.H.'s video-taped interview. We have previously quoted this testimony in issue two.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Hearsay is inadmissible unless it falls within an exception created by statute or rule. TEX. R. EVID. 802. The rules define "statement" as "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression." TEX. R. EVID. 801(a).

With respect to Officer Davis's testimony about the demeanor exhibited by K.H. during her video-taped interview, K.H.'s demeanor would be hearsay only if it constituted a statement. Nothing in this case shows K.H.'s demeanor during her interview was "intended . . . as a substitute for verbal expression." The rest of Officer Davis's testimony about what K.H. said during the interview is hearsay because it is based upon K.H.'s out-of-court statements. *See* TEX. R. EVID. 801(d). However, appellant has failed to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ex parte Ellis,* 233 S.W.3d at 330 (quoting

*Strickland*, 466 U.S. at 694). Also, the record is silent concerning why defense counsel did not lodge any hearsay objections to that testimony. Accordingly, the record before us is insufficient to discern whether counsel's conduct was a product of reasonable trial strategy.

*3. Failing To Object To The Prosecutor's Guilt-Innocence Closing Argument*

During the final segment of the State's guilt-innocence closing argument, the prosecutor argued, in relevant part:

> But we know that sex offenses happen. We know that they happen here in Bell County. Deb Kleypas just herself has done 600 examinations. These crimes happen, and *we have to tell our children in Bell County that we are going to believe them and we are going to support them and we are at least going to give those scars a chance to heal*. . . .

Appellant claims that counsel should have objected to the italicized portion of this argument.

Because the evidence did not show that children are always truthful when accusing someone of sexually abusing them, or that all children are scarred from sexual abuse, the prosecutor's remarks did not constitute either a summation of the evidence presented at trial or a reasonable deduction drawn from that evidence. Furthermore, the argument was not a proper plea for law enforcement nor was it in response to counsel's argument. Therefore, the remarks fell outside the permissible areas of proper jury argument. *See Jackson*, 17 S.W.3d at 673. Nevertheless, even when the argument exceeds the permissible bounds of approved jury argument, "such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Phillips v. State*, 701 S.W.2d 875, 892 (Tex. Crim. App. 1985). Here, in light of the record as a whole, the remarks were neither (1) extreme or manifestly improper, (2) violative of a

25

mandatory statute, nor (3) injected new facts, harmful to appellant. Thus, appellant has failed to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ex parte Ellis,* 233 S.W.3d at 330 (quoting *Strickland*, 466 U.S. at 694).

*4. Failing To Object To The Prosecutor's Punishment Phase Closing Argument*

Appellant argues counsel was ineffective because he did not object to the prosecutor's closing argument with respect to the application of parole law. In accordance with statute, the jury received the proper parole instructions[16] in the punishment charge. During closing argument, the prosecutor argued as follows:

> Now, when we are talking about the Charge [sic], the most common question we get is, "What is the difference between 99 and life?" Well, let me put it this way. Here is 5 years, here is 60 years, and then between here is 60 and 99. If you give anywhere from 5 to 99 years, the maximum sentence he will serve before being eligible for parole, eligible, is 30 years. In other words, if you give him 75, he's not going to do 37-1/2. If you give him 99, he's not going to do 45 because, first, eligibility for parole is basically cut off at 60. Okay? If you give him a life sentence, he's eligible for parole after 30 years. He would be 57 years old if he made it, quite able to carry out what he wasn't able to do past 30 years.

---

[16]Article 37.07, section 4(a) provides, in relevant part:

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty (30) years, whichever is less, without consideration of any good conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted.

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2008).

26

Counsel did not object to this argument.

Even if counsel had preserved this complaint, we do not believe the argument is improper. *See Taylor v. State*, 233 S.W.3d 356 (Tex. Crim. App. 2007). In *Taylor*, the punishment charge gave the jury the parole instructions that the jury received in the case before us. *See id*. at 358. After the trial court charged the jury, the prosecutor argued, in relevant part:

> Now, let me stop and talk to you about the charge for just a moment so that you can-you probably do understand already but the Judge mentioned to you that as far as parole eligibility that the defendant becomes eligible for parole after he serves one-half of the sentence imposed or thirty years. Let me explain that to you for just a moment. Let's say a sentence of 40 years-
>
> * * *
>
> A 40-year sentence means the defendant becomes eligible for parole after serving 20 years.
>
> * * *
>
> A 60-year sentence means he becomes eligible after serving 30 years. A sentence of life or 75 still means he becomes eligible after 30 years. So, why would I ask you for life and a $10,000 fine if he becomes eligible at the same point?

*Id*. The jury sentenced the defendant to fifty years in prison and a $10,000 fine. *Id*. at 359. On appeal, the defendant asserted the argument was improper, but the court of criminal appeals disagreed, stating that the prosecutor "did not convey any information beyond what was properly contained in the charge when he explained how the parole eligibility rules set out in the charge worked with forty, sixty and seventy-five year sentences. The explanation simply ensured that the jury understood the language set out in the instructions." *Id*. at 359.

Likewise, in this case, the prosecutor did not convey any information beyond what was properly contained in the charge when he explained how the parole eligibility rules set

27

out in the charge worked with respect to seventy-five, ninety-nine and life imprisonment. The only remaining part of the prosecutor's argument that might have been objectionable was the statement at the end of the colloquy: "He would be 57 years old if he made it, quite able to carry out what he wasn't able to do past 30 years." Assuming that this part of the argument was improper, it was harmless because appellant was sentenced to only fifty years. *See id*. (prosecutor's argument at end of colloquy: "So, why would I ask you for life and a $10,000 fine if he becomes eligible at the same point?" held harmless because defendant was sentenced to only fifty years).

Moreover, appellant's argument that the claimed deficiency resulted in a higher sentence is speculation. The punishment range for aggravated sexual assault of a child is five to ninety-nine years or life in prison and a fine of up to $10,000. TEX. PENAL CODE ANN. §§ 22.021(e), 12.32(a), (b) (Vernon 2003 & Supp. 2008). After hearing the punishment evidence that appellant had sexually assaulted another person prior to sexually assaulting K.H., the jury assessed a fifty-year sentence and no fine, which is in the middle of the punishment range. Based on the record before us, we conclude appellant has not met his burden to show either deficient performance or that the result would have been different had counsel objected, asked the trial court to instruct the jury to disregard the prosecutor's statements and to have moved for a mistrial. Issues three and five are overruled.

*D. Denial Of Mistrial*

In issue four, appellant argues the trial court erred in denying his motion for a mistrial after sustaining his objection to statements the prosecutor made during guilt-innocence closing argument. During voir dire examination, the trial court excused the venire members from the courtroom so that six prospective jurors could speak to the court

28

and to the attorneys for both sides in private. Five of these prospective jurors stated that they were either sexually abused, had a family member who was sexually abused, or had lived with a sex offender. None of the six prospective jurors were seated on the jury. During guilt-innocence closing argument, the prosecutor made the following comment[17] to the jury:

> So the question is, the 12 of you all, she's placed her trust in you. Now her trust has been broken by that man, and she is going to carry that scar permanently with her for the rest of her life. *You heard how hard it was for six* [sic] *of your own jury panel to talk about sex. They had to approach the bench and talk to the lawyers in private. Those are adults that are permanently scarred by things that happened in their past*.

At this point, defense counsel objected that the argument was "outside the record." The trial court sustained the objection. When counsel asked the trial court "to instruct the jury to disregard," the trial court replied, "The jury will disregard." The trial court denied counsel's request for a mistrial.

"A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). Only extreme circumstances, when the prejudice is incurable, require a mistrial. *Id*. In cases when the trial court sustains an objection and instructs the jury to disregard, but denies a motion for mistrial, the proper issue is whether the trial court abused its discretion by denying the mistrial. *Id*. at 76-77. A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). With respect to jury argument that

---

[17]Appellant complains about the italicized comments.

falls outside the four permissible areas,[18] the factors we consider in determining whether the trial court abused its discretion in denying a mistrial include: (1) severity of the misconduct (magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (efficacy of the trial court's cautionary instruction); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting conviction). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *Tucker v. State*, 15 S.W.3d 229, 237-38 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) (applying *Mosley* factors to determine if improper guilt-innocence final argument constituted reversal).[19] We consider the argument in the context in which it appeared. *Denison v. State*, 651 S.W.2d 754, 761 (Tex. Crim. App. 1983); *Ayala v. State*, 267 S.W.3d 428, 436 (Tex. App.–Houston [14th Dist.] 2008, no pet.).

### 1. First Mosley Factor–Severity Of The Misconduct

The prosecutor was apparently trying to make a plea for law enforcement by explaining to the jury how sexual abuse affected the victim. The prosecutor stated that K.H. "is going to carry that scar[20] permanently with her for the rest of her life." Then, she reminded the jury about what happened at voir dire, stating: "They had to approach the

---

[18]*See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000).

[19]We do not find that the prosecutor's remarks impinged upon appellant's constitutional rights. *See Tucker v. State*, 15 S.W.3d 229, 237 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) (finding the trial court's erroneous ruling regarding improper comments made during jury argument involved nonconstituional error); *Ortiz v. State*, 999 S.W.2d 600, 605-06 (Tex. App.–Houston [14th Dist.] 1999, no pet.) (finding the trial court's error in overruling defendant's repeated objections to arguments outside the record amounted to nonconstituional error). We therefore use the *Mosley* factors to determine if the trial court in this case should have granted a mistrial.

[20]That K.H. would be emotionally scarred from an aggravated sexual assault is a reasonable deduction from the evidence in light of R.H.'s testimony that because of the experience: (1) K.H. required counseling; (2) K.H. "was emotional all the time;" and (3) the assault affected K.H.'s relationships with adult males. *See Williams v. State*, 732 S.W.2d 762, 765 (Tex. App.–Beaumont 1987, no pet.) (noting that victim would be emotionally scarred from aggravated sexual assault was reasonable deduction from evidence that victim required counseling). One may argue reasonable deductions from the evidence. *See Cannady v. State,* 11 S.W.3d 205, 213 (Tex. Crim. App. 2000).

30

bench and talk to the lawyers in private. Those are adults that are permanently scarred by things that happened in their past." However, because the five prospective jurors spoke to the trial court and the attorneys outside the presence of the other venire members, and because the record does not show that the five prospective jurors were "permanently scarred," the prosecutor exceeded the bounds of permissible jury argument. *See Jackson*, 17 S.W.3d at 673. Nevertheless, the prosecutor did not repeat this argument, and we do not find the improper argument to be severe. *See Geuder v. State*, 76 S.W.3d 133, 138 (Tex. App.–Houston [14th Dist.] 2002), *overruled on other grounds,* 115 S.W.3d 11 (Tex. Crim. App. 2003) (finding mistrial not necessary despite the statement "[w]ho knows how many other people . . . [defendant] has stolen from in other counties" by prosecutor in guilt-innocence phase).

### 2. Second Mosley Factor–Measures Adopted To Cure The Misconduct

"In the vast majority of cases in which argument is made . . . which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused," the court of criminal appeals has relied upon "an appellate presumption that an instruction to disregard . . . will be obeyed by the jury." *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). Furthermore, "[w]hen counsel asks for a particular instruction and the trial court accedes to the request by saying 'the jury is so instructed,' that instruction will in most cases be considered effective to cure the harm from an improper argument." *Hawkins*, 135 S.W.3d at 84. Here, the trial court immediately sustained the objection and instructed the jury to disregard. We find this curative measure sufficient. *See Hawkins*, 135 S.W.3d at 84.

*3. Third Mosley factor–Certainty Of Conviction Absent The Misconduct*

K.H. testified that appellant touched her, "In my vagina" and that appellant "moved it [his finger] around in there." When the prosecutor asked her, "And are you talking about your vagina?", she said, "Yes, ma'am." R.H. testified that K.H. said that appellant touched her "In my private" and that K.H. "told me that he [appellant] had put his finger in her vagina." Deborah Kleypas testified that she found "redness" inside K.H.'s labia majora. When the prosecutor asked Kleypas, "And was that [redness], based on your training and experience, consistent or inconsistent with a male inserting his fingers into her [K.H.'s] vagina?", she replied, "Her redness could be consistent with her history about what happened." Thus, absent the improper comments, the certainty of conviction is strong.

After balancing the three factors, we hold that any possible harm caused by the argument was cured by the trial court's instruction. Because that instruction is presumed effective, the trial court did not abuse its discretion by denying the motion for mistrial. *See Ladd*, 3 S.W.3d at 567 (grant of a mistrial is required only "when error is so prejudicial that expenditure of further time and expense would be wasteful and futile"). Issue four is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 12th day of February, 2009.

32