COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-178-CR

 

 

MONTERIO DESHA HILL                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Appellant
Monterio Desha Hill appeals his two convictions for possession with intent to
deliver a controlled substance; namely, cocaine and ecstacy.[1]  In twenty-five points, Hill argues that the
trial court erred by denying his motion to suppress evidence; that the trial
court erred by admitting photos of a gun found by police during a search of
Hill=s sport
utility vehicle (SUV); that the trial court erred by overruling his objections
to comments made by the prosecutor during closing arguments; and that he
received ineffective assistance of counsel at trial.  We will affirm.

II.  Factual and Procedural Background








On
January 29, 2008, officers for the Fort Worth Police Department=s gang
unit were patrolling on the east side of Fort Worth.  According to Sergeant Stephen Enright, the
area had recently been plagued with a rash of robberies.  As a result, there were roughly seven
officers patrolling as a group on January 29Csome in
marked police vehicles and others in unmarked police vehicles.  Enright testified at trial that Hill=s SUV
originally caught his attention because it pulled into the back of a McDonald=s
parking lot and stopped, but no one got out of the vehicle.  After a short time, Hill=s SUV
drove away from McDonald=s, only to enter the parking lot
of a convenience store about a block away, remain still for a moment, and then
eventually continue through the parking lot and back into a parking spot in
front of the storeCagain, no one got out of the
vehicle.  During his observation of Hill=s SUV,
Enright noticed that the SUV had dark tinting on its windows.  Enright believed the tinting was
illegal.  After staying parked in the
convenience store parking lot for several minutes, Hill=s SUV
left the convenience store, traveled a short distance, and made a left-hand turn
into a nearby shopping center.  Enright
said that Hill failed to use his signal during the turn.

Enright
initiated a traffic stop.  As several
police cars pulled up, Hill, who was driving the SUV, and the front passenger
opened their doors and exited the vehicle. 
They both left their doors open. 
Officer Jesus Alanis testified that he observed Hill exit his SUV.  Alanis said that as he exited, Hill turned to
look at Enright and his partner, who had pulled in front of Hill, and that Hill
Areach[ed]
towards his shirt, kind of reaching under his shirt on his back.@  Alanis said that he suspected Hill was
reaching for a weapon, so Alanis drew his gun and shouted at Hill to Alet me
see [your] hands[!]@ 
After Alanis drew his gun, several of the other officers, including
Enright, drew their weapons as well.  One
of the officers placed handcuffs on Hill. 
The officers also conducted a pat-down of Hill.  Alanis said that as soon as the officers
determined that Hill did not have a weapon, the officers holstered their
weapons and continued the traffic stop, which included determining whether
there were other occupants of the SUV.

Alanis
said that Athe tint and the interior of the
cabin was pretty dark, so I couldn=t see if
anybody was back there.@ 
He eventually ascertained that two more passengers were in the back of
the SUV, and he had them exit the SUV.








Enright
testified that when he approached Hill=s SUV,
the driver=s side door was open because
Hill had opened it when he exited. 
Enright said he simply looked into the vehicle and observed a brown
paper bag wedged between the driver=s side
seat and the center console.  According
to Enright, A[I]n that brown paper bag
visible was a clear plastic [baggie] containing an off-white rock-like
substance, which through my experience led me to believe it was crack cocaine.@  Alanis testified that Enright signaled to him
that he could see illegal drugs in the SUV. 
Alanis said that Enright pointed to the front seat, and from Alanis=s view,
he could see Aa brown paper bag that appeared
to be semi-torn open.  There was a clear
plastic [baggie] container and you could see some off-colored -- off-white
colored rocks.  Looked like crack
cocaine.@  The officers arrested Hill for possession of
a controlled substance with intent to deliver.








After
Hill was arrested, the officers continued to search Hill=s
SUV.  The search revealed another bag in
the passenger floorboard that contained ecstacy, marijuana, and a digital
scale.  The vehicle search revealed a container
that looked like a salt shaker that had a Afalse
lid@ that
when opened contained roughly twenty pinkish-orange colored pills later
discovered to be ecstacy.  The officers also
discovered a substantial amount of cashC$1,074
in varying denominationsCon the appellant.  The officers further found a fully loaded .40
caliber automatic pistol next to the air cleaner under the hood of Hill=s
SUV.  The officers also determined that
the tint on the windows of Hill=s SUV
was illegally dark.

Hill=s trial
counsel did not file a written motion to suppress.  Instead, after trial began and after the
prosecutor asked Enright a few questions, Hill=s trial
counsel verbally moved to suppress the evidence found in Hill=s SUV on
the ground that the search of the SUV was the Aresult
of an illegal arrest.@ 
The trial court overruled trial counsel=s
motion.  The trial continued.  Enright, Alanis, Officer Perales, and
Corporal Combs all testified to their accounts of the evening.  That testimony included, without objection,
the discovery of the gun under the hood of Hill=s
SUV.  But when the prosecutor offered
photographs of the gun, trial counsel objected on the basis that the gun was
not relevant to the charges.  The trial
court overruled the objection.  Later,
during closing arguments, the following colloquy took place:

[Prosecutor to Jury]:  And, you
know, the only reason why they could see who was in that car at the time they
did, because these people had a guilty conscience.  [Hill] had a guilty conscience and when he
sees these officers pulling up on him, I got to get out of this car because my
dope is in here, I=m going to distance
myself and he starts getting out.  The
front seat passenger who also knows there=s dope in the car, she distances herself and
starts walking away.  That=s what they=re doing, because they
know what=s in that car.

 








And don=t tell me that someone
from the backseat threw this dope up in the front seat or stuffed it up in that
front seat while he was sitting there. 
You think he wouldn=t put up a fight and say, Man, don=t put your dope on
me.  You know, that=s not how it happened.

 

[Defense counsel]:  I ‑‑
Judge, that=s a comment on Defendant=s failure to testify
because it=s a question that only he
can answer.

 

THE COURT:  All right.  That=s ‑‑ that=s overruled.  It=s just final argument.  Argument is not evidence, ladies and
gentlemen.

 

After
closing arguments, the jury retired to deliberate.  The jury returned a verdict of guilty on both
charges, and the trial court assessed punishment at life for the cocaine and
sixty years= incarceration for the
ecstacy.  The trial court ordered the
sentences to run concurrently.  This
appeal followed.

III.  Discussion

A.     Motion to Suppress

In his
first, second, and third points, Hill argues that the trial court erred by
denying his motion to suppress evidence found in his SUV.  We disagree.

1.     Standard of Review for Motion to Suppress








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo. 
Amador, 221 S.W.3d at 673; Estrada v. State, 154 S.W.3d
604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.








Stated
another way, when reviewing the trial court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818B19.  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.

When the
record is silent on the reasons for the trial court=s
ruling, or when there are no explicit fact findings and neither party timely
requested findings and conclusions from the trial court, we imply the necessary
fact findings that would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then
review the trial court=s legal ruling de novo
unless the implied fact findings supported by the record are also dispositive
of the legal ruling.  Kelly, 204
S.W.3d at 819.

We must
uphold the trial court=s ruling if it is supported by
the record and correct under any theory of law applicable to the case even if
the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736, 740
(Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).








2.     The Traffic Stop and the Officers=
Detention of Hill

In part
of his first, second, and third points, Hill argues that the trial court erred
by denying his motion to suppress because the police arrested him without
probable cause.  Hill predicates his
argument on the notion that when he exited his vehicle and the officers drew
their weapons on him, handcuffed him, and patted him down, he had been
illegally arrested.  Hill does not
challenge whether the officers=
initially stopping him was legal.  The
State counters that the officers had reasonable suspicion to detain Hill in the
manner they did because of how Hill and one of his passengers exited the
vehicle and because Hill reached back toward his waistbandCindicating
he was reaching for a weapon.  We
conclude that the officers=
continued detention of Hill, including drawing their weapons, handcuffing him,
and conducting a pat-down, was justified.








In a
traffic stop situation, the police may ask for identification, a valid driver
license, and proof of liability insurance. 
Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  Police may check for outstanding
warrants.  Id. at 245.  Police officers may also order the driver to
get out of the vehicle.  See
Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S. Ct. 330, 333 (1977); see
also Diltz v. State, 172 S.W.3d 681, 685 (Tex. App.CEastland
2005, no pet.).  Further, as a general
rule, officers may use such force as is reasonably necessary to effect the goal
of the stopCinvestigation, maintenance of
the status quo, or officer safety.  Rhodes
v. State, 945 S.W.2d 115, 117 (Tex. Crim. App.), cert. denied, 522
U.S. 894 (1997) (citing United States v. Sokolow, 490 U.S. 1, 10, 109 S.
Ct. 1581, 1587 (1989)).  Under certain
circumstances, the handcuffing of a vehicle=s occupants
may be appropriate to effectuate officer safety, such as when it is necessary
to thwart a suspect=s attempt to frustrate further
inquiry.  See Rhodes, 945 S.W.2d
at 117.








During
the course of a lawful traffic stop, an officer who develops reasonable
suspicion that an occupant of the vehicle is engaged in, or will soon engage
in, criminal activity may continue the detention of the occupants of the
vehicle to investigate criminal activity beyond the scope of the law violation
that formed the basis of the initial stop. 
Sims v. State, 98 S.W.3d 292, 295B96 (Tex.
App.CHouston
[1st Dist.] 2003, pet. ref=d); Estrada
v. State, 30 S.W.3d 599, 603 (Tex. App.CAustin
2000, pet. ref=d).  The test for reasonable suspicion is a
factual one and is made and reviewed by considering the totality of the
circumstances at the time of the stop.  Loesch
v. State, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997).  Reasonable suspicion exists if the officer
has specific, articulable facts that, when combined with rational inferences
from those facts, would lead him to reasonably suspect that a particular person
has, is, or soon will be engaged in illegal conduct.  Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001).  After making a
stop for a traffic violation, an officer may rely on all the facts ascertained
during the course of his contact with a detainee to develop articulable facts
that would justify a continued detention. 
Powell v. State, 5 S.W.3d 369, 377 (Tex. App.CTexarkana
1999, pet. ref=d), cert. denied, 529
U.S. 1116 (2000).  Further, in forming
reasonable suspicion to justify a continued detention, an officer may draw on
his training and experience.  Estrada,
30 S.W.3d at 603; see also United States v. Cortez, 449 U.S. 411, 421,
101 S. Ct. 690, 697 (1981).

In this
case, Enright testified that he was initially suspicious of Hill=s SUV
because it stopped at a McDonald=s but Ano one
got out to order food@ before Hill=s SUV
drove off.  Enright became more
suspicious when Hill backed his SUV into a spot in another parking lot, stayed
a few minutes, and then Astarted up again and began to
exit the parking lot.@ 
Enright noticed that the SUV had unusually dark tint on its windows and
believed that the windows were illegally tinted.  He also observed Hill fail to signal during a
turnCa
traffic violation.








Alanis
testified thatCin his experienceCas the
officers conducted a stop for the traffic violations, Hill and the front
passenger acted out of the ordinary by opening the doors and immediately
exiting the SUV.  Alanis further said
that when Hill exited the vehicle, he Astarted
reaching towards his shirt, kind of reaching under his shirt on his back, and
that alerted me that maybe -- he was probably reaching for a weapon, which is
when I gave him a verbal command to see his hands.@  Hill=s
behavior prompted Alanis to draw his weapon. 
Enright also drew his weapon after seeing Alanis do the same.  Alanis said that as soon as the officers
determined that Hill did not have a weapon, the officers holstered their
weapons and continued the traffic stop, which included determining whether
there were other occupants of the SUV. 
Alanis said that Athe tint and the interior of the
cabin [were] pretty dark, so I couldn=t see if
anybody was back there.@ 
He eventually ascertained that two more passengers were in the back of
the SUV, and he had them exit the SUV.

Viewing
this evidence in a light most favorable to the trial court=s denial
of Hill=s motion
to suppress and assuming that the officers= detention
of Hill was beyond the scope of the traffic infraction that formed the basis of
the initial stop, we hold that under the totality of circumstances the officers
in this case had reasonable suspicion to continue to detain Hill to investigate
whether Hill was engaged in, or would soon engage in, criminal activity.  See Sims, 98 S.W.3d at 295B96.  We further hold that the officers=
handcuffing of Hill was justified by their attempts to effectively provide for
their own safety while they investigated their suspicions.  See Rhodes, 945 S.W.2d at 117.  We overrule this portion of Hill=s first,
second, and third points.








3.     Evidence Found in Hill=s SUV

In part
of his first, second, and third points, Hill argues that the trial court erred
by denying his motion to suppress because, according to Hill, the officers
violated his rights under the Fourth Amendment to the United States
Constitution and Article 1, Section 9 of the Texas Constitution, as well as
article 38.23 of the Texas Code of Criminal Procedure, when they conducted a
warrantless search of his SUV and seized contraband found inside.  The State argues that the officers initially
observed crack cocaine in plain view and were justified in seizing it.  The State further argues that after having
seized the crack cocaine and arresting Hill, they were justified in conducting
a warrantless search of his SUV.  We
agree with the State.

a.      Plain View








The
plain view doctrine involves no invasion of privacy.  See Texas v. Brown, 460 U.S. 730, 738B39, 103
S. Ct. 1535, 1541 (1983); Walter v. State, 28 S.W.3d 538, 541 (Tex.
Crim. App. 2000).  Thus, if an item is in
plain view, neither its observation nor its seizure involves any invasion of
privacy.  Walter, 28 S.W.3d at
541.  The rationale of the plain view
doctrine is that if contraband is left in open view and is observed by a police
officer from a lawful vantage point, there has been no invasion of a legitimate
expectation of privacy and thus no Asearch@ within
the meaning of the Fourth Amendment.  See
Illinois v. Andreas, 463 U.S. 765, 771, 103 S. Ct. 3319, 3324 (1983).  An object is seized in plain view if three
requirements are met.  Keehn v. State,
279 S.W.3d 330, 334 (Tex. Crim. App. 2009). 
First, law enforcement officials must lawfully be where the object can
be Aplainly
viewed.@  Id. (citing Horton v. California,
496 U.S. 128, 136, 110 S. Ct. 2301, 2311 (1990)).  Second, the Aincriminating
character@ of the object in plain view
must be Aimmediately
apparent@ to the
officials.  Keehn, 279 S.W.3d at
334.  Third, the officials must have the
right to access the object.  Id.  The second prong, the immediacy requirement,
requires only a showing of probable cause that the item discovered is
incriminating evidence; actual knowledge of the incriminating evidence is not
required.  Joseph v. State, 807
S.W.2d 303, 308 (Tex. Crim. App. 1991) (citing Horton, 496 U.S. at 136,
110 S. Ct. at 2311).  AProbable
cause merely requires that the facts available to the officer would warrant a
man of reasonable caution in the belief . . . that certain
items may be contraband.@ 
Miller v. State, 686 S.W.2d 725, 728 (Tex. App.CSan
Antonio 1985, no pet.).  An officer may
rely on training and experience to draw inferences and make deductions as to
the nature of the item seen.  Nichols
v. State, 886 S.W.2d 324, 325B26 (Tex.
App.CHouston
[1st Dist.] 1994, pet. ref=d).








Officer
Enright testified that when he approached Hill=s SUV,
the driver=s side door was open because
Hill had opened it when he exited.  Enright
said he simply looked into the vehicle and observed a brown paper bag wedged
between the driver=s side seat and the center
console.  According to Enright, A[I]n
that brown paper bag visible was a clear plastic [baggie] containing an
off-white rock-like substance, which through my experience led me to believe it
was crack cocaine.@ 
Alanis testified that Enright signaled to him that he could see illegal
drugs in the SUV.  Alanis said that
Enright pointed to the front seat, and from Alanis=s view,
he could see Aa brown paper bag that appeared
to be semi-torn open.  There was a clear
plastic [baggie] container and you could see some off-colored -- off-white
colored rocks.  Looked like crack
cocaine.@

In this
case, when the officers conducted the traffic stop and approached the SUV while
investigating the traffic violations, they were legally in a position to see,
in plain view, what was wedged between the seat and console.  Both Enright and Alanis, based on their
experience and training, immediately identified what they believed to be crack
cocaine.  Because the officers saw the
crack cocaine in plain view, they lawfully seized it.  We hold that the officers seized the crack
cocaine found in Hill=s SUV wedged between the driver=s seat
and center console under the plain view doctrine and that Hill=s
expectations of privacy under the Fourth Amendment or the Texas Constitution
were not implicated.








Regarding
the search of the vehicle that followed the officers= seizing
the crack cocaine:  the officers were
certainly authorized to arrest Hill because the officers had probable cause to
believe Hill had committed an offense within their view.  Tex. Code Crim. Proc. Ann. art. 14.01 (Vernon
2005); see also State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App.
2002).  After that, the officers were
justified in conducting a warrantless search of Hill=s SUV
because they had probable cause to believe that there was contraband located
somewhere inside the vehicle.  See
State v. Guzman, 959 S.W.2d 631, 633B34 (Tex.
Crim. App. 1998) (A[A] vehicle lawfully in police
custody may be searched on the basis of probable cause to believe that it contains
contraband, and there is no requirement of exigent circumstances to justify
such a warrantless search.@)
(quoting United States v. Johns, 469 U.S. 478, 484, 105 S. Ct. 881, 902
(1985); see also United States v. Ross, 456 U.S. 798, 825, 102 S. Ct.
2157, 2173 (1982) (AIf probable cause justifies the
search of a lawfully stopped vehicle, it justifies the search of every part of
the vehicle and its contents that may conceal the object of the search.@).

b.     Hill=s
Reliance on Arizona v. Gant








During
oral argument, Hill=s counsel relied almost
exclusively on the United States Supreme Court=s recent
decision in Arizona v. Gant for the proposition that the officers were
not allowed to conduct a searchCincident
to arrestCof Hill=s
vehicle.  ‑‑‑ U.S. ‑‑‑‑,
129 S. Ct. 1710, 1711 (2009).  Hill=s
position seemed to be that because Hill posed no danger to the arresting officers,
the search of his vehicle was illegal. 
The State did not dispute Hill=s
assertion that the police officers apprehended and placed handcuffs on him and
removed him far enough away from his SUV that the officers could not have
reasonably believed that he could reach a weapon or attempt to destroy evidence
located within the vehicle.  But Hill=s
reliance on Gant is misplaced.

To be
sure, the facts underlying Gant share some similarity with those in the
instant case, but they are sufficiently dissimilar and compel a different
outcome than Gant.  A review of
the facts in Gant discloses that Gant had been arrested during the
course of a narcotics investigation on an outstanding warrant for driving with
a suspended license.  Id at
1712.  After Gant was arrested and
secured in the back of an officer=s patrol
car, officers searchedCincident to arrestCthe
vehicle that Gant had been driving.  Id.  Gant moved to suppress the firearm and the
bag of cocaine the officers found Aon the
ground that the warrantless search violated the Fourth Amendment.@  Id. at 1715.













The
Court=s
response to these facts was to absolutely transform the
search-incident-to-arrest exception.  Id.  In assessing the reasonableness of the
warrantless search, the Court held that A[i]f
there is no possibility that an arrestee could reach into the area that law
enforcement officers seek to search, both justifications for the search‑incident‑to‑arrest
exception are absent and the rule does not apply.@  Id. at 1716 (referring to the
possibilities of an arrestee reaching a weapon or destructible evidence).  In an attempt to resolve a circuit split and
add clarity to the search-incident-to-arrest exception to the warrant
requirement, the Court ruled that police may Asearch a
vehicle incident to a recent occupant=s arrest
only when the arrestee is unsecured and within reaching distance of the
passenger compartment at the time of the search.@  See id. at 1719, nn.2B3.  But where the Court limited the
search-incident-to-arrest exception concerning officer safety, it left intact,
or even broadened, the exception with respect to officers= ability
to gather evidence relevant to the crime of arrest.  Id. at 1716.  Indeed, the Court further held that Acircumstances
unique to the vehicle context [also] justify a search incident to a lawful
arrest when it is >reasonable to believe evidence
relevant to the crime of arrest might be found in the vehicle.=A  Id. at 1719 (quoting Thornton v.
United States, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137 (2004) (Scalia, J.,
concurring in judgment)).  In Gant,
ultimately, the Court also determined that the challenged evidence in Gant
did not meet the latter exception because A[a]n
evidentiary basis for the search was also lacking.@  Gant, 129 S. Ct. at 1719.  In other words, because Gant had been
arrested for driving without a license, there was no reasonable belief that
evidence relevant to that crime might have been found in his vehicle.








Concerning
the current case, this court agrees that under Gant, the officers would
likely not have been justified in searching Hill=s SUV in
order to prevent him from reaching for a weapon or destroying evidence.  But we disagree with Hill=s
conclusion that Gant=s holding
would render the officers= search per se unreasonable
because the case before this court is readily distinguishable from Gant.  Hill=s
conclusion relies on an unjustifiably narrow presentation of the circumstances
of his arrest.  It is apparently true
that in this case, as in Gant, Hill no longer posed a risk to the
officers when they conducted a search of his SUV.  But unlike in Gant, the officers in
this case arrested Hill for a crime involving narcotics, not upon the basis of
the traffic violations that served as the officers= initial
reason for stopping Hill.  Because the
officers reasonably believed that additional evidence would be found in Hill=s SUVCdue to
the quantities and nature of the crack cocaine that had been seized in plain
viewCa search
of Hill=s SUV
incident to his arrest comports with the Fourth Amendment.  See id. at 1723 (APolice
may search a vehicle incident to a recent occupant=s arrest
only if the arrestee is within reaching distance of the passenger compartment at
the time of the search or it is reasonable to believe the vehicle contains
evidence of the offense of arrest.@).  Contrary to Hill=s
contention, Gant supports the admission, rather than the suppression, of
the contested evidence in this case.  Id.  We hold that the trial court did not err by
overruling Hill=s motion to suppress and
overrule this portion of his first, second, and third points.

B.     Relevancy of Photographs of a Gun Found in
Hill=s SUV

In his
tenth point, Hill argues that the trial court erred by overruling his objection
to the admission of photographs of a gun that was found under the hood of Hill=s SUV
after he was arrested.  The State argues
that Hill waived this issue by not objecting to previous testimony regarding
the discovery of the gun.  The State
further counters that evidence pertaining to the discovery of a gun under the
hood of Hill=s SUV Atended
to make it more probable that [Hill] knowingly possessed the drugs and that he
did so with an intent to sell them.@








Even
assuming the admission of the photographs of the gun was error, we conclude
Hill has failed to preserve any error for appeal.  To preserve error in admitting evidence, a
party must make a proper objection and obtain a ruling on that objection.  See Tex. R. App. P. 33.1.  In addition, a party must object each time
the inadmissible evidence is offered or obtain a running objection.  See Valle v. State, 109 S.W.3d 500,
509 (Tex. Crim. App. 2003); Ethington v. State, 819 S.W.2d 854, 858
(Tex. Crim. App. 1991).  An error in the
admission of evidence is cured where the same evidence comes in elsewhere
without objection.  Ethington, 819
S.W.2d at 858.  Here, by Hill=s own
admission in his brief, ASeveral of the police witnesses
testified (without objection) about a handgun being found under the hood of the
SUV after the stop.@ 
As a result of this testimony, any potential error in the admission of the
objected‑to photos did not constitute reversible error.  See West v. State, 121 S.W.3d 95, 104B05 (Tex.
App.CFort
Worth 2003, pet. ref=d) (AIf the
same or similar evidence is admitted without objection at another point during
the trial, the improper admission of the evidence will not constitute
reversible error.@).

Furthermore,
had the error been preserved, we agree with the State that when considering the
charges against HillCpossession with intent to
distributeCthe trial court did not abuse its
discretion by deeming the photos relevant and allowing their admission into
evidence.

The
admission of evidence is a matter within the discretion of the trial court.  Wheeler v. State, 67 S.W.3d 879, 888 (Tex.
Crim. App. 2002).  Absent an abuse of
discretion, we will not disturb a trial court=s ruling
on the admissibility of extraneous offense evidence.  Id. 
As long as the trial court=s ruling
was within the Azone of reasonable disagreement,@ there
is no abuse of discretion, and we must uphold the trial court=s
ruling.  Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).








Here,
the trial court=s allowing the admission of the
photos depicting the gun found in Hill=s SUV,
discovered after he was arrested for possession with intent to distribute, fell
within the zone of reasonable disagreement as to whether the evidence was
relevant to the crime charged.  See
Hawkins v. State, 871 S.W.2d 539, 541 (Tex. App.CFort
Worth 1994, no pet.) (holding testimony regarding pistol found near defendant
relevant to show defendant intended to protect narcotics); see also Johnigan
v. State, 69 S.W.3d 749, 755B56 (Tex.
App.CTyler
2002, pet. ref=d) (holding possession of gun
relevant to show control and dominion over cocaine); Levario v. State,
964 S.W.2d 290, 296B97 (Tex. App.CEl Paso
1997, no pet.) (holding evidence of handgun admissible to show defendant=s
willingness to protect narcotics).  We
overrule Hill=s tenth point.

C.     Comments Regarding Hill=s
Failure to Testify

In his
seventeenth, eighteenth, and nineteenth points, Hill argues that the trial
court erred by overruling his objection to comments made by the prosecutor
during closing arguments, claiming they were improper comments on his decision
not to testify at trial.  The State
counters that the comments made were simply not a comment on Hill=s
decision not to testify.








To
determine if a prosecutor=s comment constituted an
impermissible reference to an accused=s
failure to testify, we must consider whether the language used was manifestly
intended or was of such a character that the jury would have naturally and
necessarily considered it to be a comment on the defendant=s
failure to testify.  See Bustamante v.
State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); Fuentes v. State,
991 S.W.2d 267, 275 (Tex. Crim. App.), cert. denied, 528 U.S. 1026
(1999).  The offending language must be
viewed from the jury=s standpoint, and the implication
that the comment referred to the accused=s
failure to testify must be clear.  Bustamante,
48 S.W.3d at 765; Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App.
1992).  A mere indirect or implied
allusion to the defendant=s failure to testify does not
violate the accused=s right to remain silent.  Wead v. State, 129 S.W.3d 126, 130
(Tex. Crim. App. 2004); Patrick v. State, 906 S.W.2d 481, 490B91 (Tex.
Crim. App. 1995), cert. denied, 517 U.S. 1106 (1996).








The
prosecutor=s comments that Hill takes issue
with are those the prosecutor made while explaining during closing argument
that Hill must have Ahad a guilty conscience@ because
Awhen he
sees these officers pulling up on him, I got to get out of this car because my
dope is in here, I=m going to distance myself and
he starts getting out.@ 
Shortly thereafter, the prosecutor stated that Hill and the front
passenger exited the car Abecause they know what=s in
that car.@ 
The prosecutor then explained that the crack cocaine in the front seat must
have belonged to Hill:  AYou
think he wouldn=t put up a fight and say, Man,
don=t put
your dope on me.@

Hill
does not explain how these comments are statements pertaining to his failure to
testify, and we conclude that the language used by the prosecutor was not
manifestly intended and not of such a character that the jury would have
naturally and necessarily considered it to be a comment on Hill=s
failure to testify.  See Tex. Code
Crim. Proc. Ann. art. 38.08; Bustamante, 48 S.W.3d at 765; Fuentes,
991 S.W.2d at 275.  From the jury=s
standpoint, it is unclear that the comment referred to Hill=s
failure to testify.  Bustamante,
48 S.W.3d at 765; Swallow, 829 S.W.2d at 225.  We overrule Hill=s
seventeenth, eighteenth, and nineteenth points.

D.     Ineffective Assistance of Counsel

In his
remaining points, Hill argues that his trial counsel provided ineffective
assistance of counsel because he failed to make specific objections to evidence
admitted at trial; failed to obtain running objections on specific evidence;
failed to file a written motion to suppress; and failed to object to comments
made by the prosecutor during closing arguments.  We hold that the record is insufficient to
sustain Hill=s points regarding any alleged
ineffective assistance of counsel.








To
establish ineffective assistance of counsel, a defendant must show by a
preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999).








In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each
case.  Thompson, 9 S.W.3d at
813.  The issue is whether counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688B89, 104
S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide range
of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813B14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The
second prong of Strickland requires a showing that counsel=s errors
were so serious that they deprived the defendant of a fair trial, i.e., a trial
with a reliable result.  Strickland, 466
U.S. at 687, 104 S. Ct. at 2064.  In
other words, an appellant must show there is a reasonable probability that, but
for counsel=s unprofessional errors, the
result of the proceeding would have been different.  Id. at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding in which the result is being challenged.  Id. at 697, 104 S. Ct. at 2070.








As a
general rule, we do not speculate about trial counsel=s
strategy. Blevins v. State, 18 S.W.3d 266, 271 (Tex. App.CAustin
2000, no pet.).  We will not second guess
through hindsight the strategy of counsel at trial.  Id. 
In the absence of direct evidence in the record of counsel=s
reasons for the challenged conduct, an appellate court will assume a strategic
motivation if any can be imagined.  Garcia
v. State, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); Skeen v. State,
96 S.W.3d 567, 580 (Tex. App.CTexarkana
2002, no pet.); but cf. Moore v. Johnson, 194 F.3d 586, 604 (5th Cir.
1999) (reviewing courts are Anot
required to condone unreasonable decisions parading under the umbrella of
strategy, or to fabricate tactical decisions on behalf of counsel when it
appears on the face of the record that counsel made no strategic decision at
all.@).  The challenged conduct will not, under the
circumstances, constitute deficient performance unless the conduct was so
outrageous that no competent attorney would have engaged in it.  Garcia, 57 S.W.3d at 441; Thompson,
9 S.W.3d at 814.

Claims
of ineffective assistance of trial counsel, however, can be properly raised on
appeal if the appellate record is sufficiently developed.  Robinson v. State, 16 S.W.3d 808, 813,
n.7 (Tex. Crim. App. 2000).  But in most
cases the trial record alone will be insufficient.  See Thompson, 9 S.W.3d at 813.  The record can be developed by a hearing on a
motion for new trial based on a claim of ineffective assistance of
counsel.  See Reyes v. State, 849
S.W.2d 812, 815 (Tex. Crim. App. 1993). 
Hill urges that the instant record is sufficient to support his claim.








It
should be noted that trial counsel=s
failure to file pretrial motions generally does not result in ineffective
assistance of counsel.  Hayes v. State,
484 S.W.2d 922, 925 (Tex. Crim. App. 1972); Autry v. State, 27 S.W.3d
177, 182 (Tex. App.CSan Antonio 2000, pet. ref=d).  Likewise, isolated instances of a failure to
object to inadmissible argument or evidence does not necessarily render counsel
ineffective.  Passmore v. State,
617 S.W.2d 682, 686 (Tex. Crim. App. 1981), overruled on other grounds by
Reed v. State, 744 S.W.2d 112 (Tex. Crim. App. 1988); Jordan v. State,
859 S.W.2d 418, 421 (Tex. App.CHouston
[1st Dist.] 1993, no pet.).  And counsel
is not necessarily deficient for failing to request an instruction on
extraneous offenses.  Johnson v. State,
629 S.W.2d 731, 736 (Tex. Crim. App. 1981). 
It is always possible that trial counsel does not wish to draw further
attention to any extraneous offenses.  Id.  Where the record fails to reflect counsel=s
reasoning, we will presume he exercised reasonable professional judgment.  Poole v. State, 974 S.W.2d 892, 902
(Tex. App.CAustin 1998, pet. ref=d).








In this
case, Hill fails to rebut the presumption that the actions of counsel were the
result of a strategic or reasonable decision, because the record is silent as
to why trial counsel made the decision that he made.  Romero v. State, 34 S.W.3d 323, 327
(Tex. App.CSan Antonio 2000, pet. ref=d); Gamble
v. State, 916 S.W.2d 92, 93 (Tex. App.CHouston
[1st Dist.] 1996, no pet.).  Because
there was no motion for new trial addressing these alleged failures, there is
only speculation that different conduct by trial counsel would have been
beneficial to Hill.  Miranda v. State,
993 S.W.2d 323, 327B28 (Tex. App.CAustin
1999, no pet.).  We deem the record
inadequate to make a fair evaluation of Hill=s
claims.  We do note that Hill is not
foreclosed from presenting his claim via a collateral attack by virtue of an
application for post‑conviction writ of habeas corpus.  Robinson, 16 S.W.3d at 812B13; Jackson
v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); Ex parte Torres,
943 S.W.2d 469, 475 (Tex. Crim. App. 1997). 
We overrule the remainder of Hill=s
points.

IV.  Conclusion

Having
overruled each of Hill=s points, we affirm the trial
court=s
judgment.

 

BILL MEIER

JUSTICE

 

PANEL: 
LIVINGSTON, MCCOY, and MEIER, JJ.

 

PUBLISH

 

DELIVERED: 
November 12, 2009











[1]See Tex. Health & Safety
Code Ann. '' 481.112(d),
481.115(d) (Vernon Supp. 2009).